### FRAVERT V. FESLER ET AL.

1. CONTRACTS—STIPULATION FOR ARBITRATION.

Where a contract provided that if any difference should arise between the parties it should be submitted to arbitration, the word difference meant disagreement, and the mere failure to pay a sum of money due under the contract was not such difference or disagreement between the parties as required an arbitration before suit brought.

2. SAME—WAIVER.

In an action on a contract in which it was stipulated, that in case of difference between the parties it should be submitted to arbitrators, and neither the complaint nor the answer made any claim on account of the stipulation, it must be held to have been waived by both parties.

3. PLEADING—ANSWER.

Where the facts alleged in a complaint are presumptively within the knowledge of the defendant, they cannot be put in issue by an answer that the defendant "has not and cannot obtain sufficient knowledge or information on which to base a belief.". Such an answer is an admission of the allegations.

*Appeal from the District Court of Garfield County.*

Mr. EDWARD T. TAYLOR and Mr. J. W. DOLLISON, for appellant.

Messrs. ROGERS, CUTHBERT & ELLIS and Mr. C. W. DARROW, for appellees.

THOMSON, P. J., delivered the opinion of the court.

This suit was brought by the appellant on a contract between his assignors and the appellee. Judgment was asked for a balance alleged to be due, and a decree prayed subjecting certain land to the payment of the judgment. The complaint alleged that on the 7th day of July, 1891, Youngers & Company, a copartnership, entered into a written contract with the defendant P. Randolph Morris, whereby they agreed to plant upon his farm 2,200 trees, certain distances apart, at

$1.25 each, and also to cultivate and care for them during the seasons of 1892, 1893 and 1894, and replace the trees which might die from causes other than those which Morris bound himself to provide against; that Morris agreed to pay for the trees in four equal installments; one on May 1, 1892, one on October 1, 1892, one on October 1, 1893, and one on October 1, 1894; that Morris paid the first two installments but failed to pay the others; that on the 20th day of May, 1892, Youngers & Company, for a valuable consideration, assigned their interest in the contract, and their rights thereunder to the plaintiff; that Youngers & Company duly furnished and planted the trees, and that they and the plaintiff thenceforward cultivated and cared for them; and that the plaintiff and his assignors had performed all of the conditions of the contract by them required to be performed. It was provided in the contract that the price to be paid for planting and caring for the trees should be an incumbrance and lien upon the land, and that all of the covenants and agreements of Morris should be covenants running with the land. The complaint further averred that on the 19th day of January, 1893, Morris executed a trust deed conveying the land to the defendant, Darrow, to secure a promissory note to the defendant Bolles for $8,500, and afterwards, on the 9th day of December, 1893, conveyed the land by warranty deed to the defendant Fesler, and alleged that the conveyances were fraudulent, and that at the time of their execution the several grantees, and the beneficiary in the deed of trust, had full knowledge of the rights of the plaintiff in the premises.

The contract contained the following provision: "It is hereby understood and agreed by and between the parties hereto that should any difference arise in regard to the proper performance of work or payments or agreements to be kept and performed by either party hereto, under this agreement, then such difference shall be left to three arbitrators, each party hereto to select one, and the two thus selected to select a third, and the decision of said arbitrators shall be final and binding upon all parties in interest under this agreement."

The answer of Morris denied fraud in the conveyances, and contained the following: "Admits that said Youngers & Co. furnished and planted certain trees on said premises, and did certain cultivation and caring for the same; but as to whether said Youngers & Co. fully kept all their agreements in said contract and duly performed the same, * * * this defendant has not and cannot obtain sufficient knowledge or information on which to base a belief.* * * That as to whether * * * the plaintiff has fully or at all complied with or completed all or any of the terms or conditions of said contract or agreement with reference to the cultivation of said or any of said trees, this defendant has not and cannot obtain sufficient knowledge or information upon which to base a belief." The answers of Darrow, Bolles and Fesler denied knowledge of the contract between Youngers & Company and Morris; denied fraud in the conveyances; and denied knowledge, when the conveyances were executed, of any rights of the plaintiff or his assignors in the premises.

The following was the finding and judgment of the court upon the final hearing: "Now on this 22d day of April, A. D. 1896, this cause coming on again for a decision of the court, and the court being now thoroughly advised in the premises, doth find as a conclusion of law that the contract or agreement set out in the complaint herein, and upon which this action is based, provides as a condition precedent to the bringing or maintaining any action thereon or arising out of the same, that all matters in dispute or arising therefrom, and the amount due or owing thereunder, shall be first submitted to a board of arbitration, consisting of three arbitrators, one to be chosen by the plaintiff, one to be chosen by the defendant, Morris, and they together to select a third, and that the plaintiff, because of a failure to comply with said condition precedent or offer any legal excuse for such failure, had prematurely brought this action; the court finding, as a matter of fact, that there was no arbitration between the parties of such matters in dispute, or offer on the part

of the plaintiff to submit the same to arbitration under the terms of said agreement.

" Wherefore it is ordered, adjudged and decreed by the court, that this cause be and the same hereby is dismissed; and it is further ordered, adjudged and decreed by the court that defendants do have and recover of and from the plaintiff their costs laid out and expended herein, to be taxed by the clerk."

There was evidence tending to sustain the allegations of the complaint, and objections to questions asked a witness for the purpose of eliciting other evidence in the same direction, were sustained. The theory of the court evidently was that as there was no arbitration, and no allegation or proof of an offer by the plaintiff to submit the case to arbitration, the action would not lie. The only questions discussed, and the only questions before this court for decision, are thus stated in the printed argument of counsel for the defendants:

" *First.* Whether the submission to arbitration of the differences between the parties in regard to the proper performance of the work, and the keeping of the agreements of the parties, or a legal excuse for failure to so submit to arbitration, is, under the provisions of the contract, a condition precedent to the maintenance of this action.

" *Second.* Whether there was sufficient evidence to sustain the findings of the court that differences did exist between the parties in regard to whether the work had been properly performed and the agreement properly kept, and that Morris objected to the manner in which Fravert performed the contract, and that this objection was *bona fide* and not capricious. And whether the lower court was justified in finding that there was something to arbitrate, and that the plaintiff had not offered, and that Morris had not refused, to submit the differences to arbitration. In other words, whether the record sustains the court in holding that under the evidence Fravert should have submitted his claims to arbitration before bringing suit."

We need not inquire into the effect of the presence, in a contract, of a stipulation to submit differences to arbitration, where such submission is not expressly made a condition precedent to a right of action, or where the agreement is not of such a nature that a submission of some question or questions of fact, is necessary to fix liability, because we can reach an entirely satisfactory decision of the controversy as it is presented to us, without investigating any question arising upon the form of the arbitration agreement. By the terms of the stipulation before us, the obligation of the parties to resort to arbitration was conditional. It was dependent upon the occurrence of some difference between them concerning the performance of the agreements contained in the contract. If no difference should arise, there would be no question to submit. The word "difference," as the parties employed it, means disagreement, or dispute. Unless there was some disagreement or dispute there was nothing to arbitrate. Mere failure of one to pay a debt owing to another does not constitute a difference between them in the sense in which the term was used here. Such failure might happen without any disagreement as to the amount due, or the justice of the demand, or any matter affecting the rights of the parties. The complaint contained no allegation concerning the stipulation; but such allegation was not necessary to the statement of a cause of action. By ignoring the stipulation, the plaintiff merely relinquished any right he might have had to insist upon it. If there was in fact a dispute between the parties in respect of compliance with the terms of the contract, as the complaint was silent on the subject, it devolved upon Morris, if he relied upon the stipulation, to plead it, and to aver that he demanded, and that the plaintiff refused, a submission to arbitration. The stipulation was made for the equal benefit of both parties; and if the condition happened upon which the agreement depended, it was no more incumbent upon one than upon the other to offer arbitration. Any person may waive a formal condition inserted in a contract for his benefit; and the waiver need not be express. He may

waive it by failing to insist upon it at the proper time. If this agreement ever became effective at all, as neither the plaintiff in his complaint, nor Morris in his answer, made any claim on account of it, it must be held to have been waived by both. By their pleadings they have dismissed it from their controversy. *Nurney v. Ins. Co.*, 63 Mich. 633; *Ins. Co. v. Badger*, 53 Wis. 283; *Hutchinson v. Ins. Co.*, 153 Mass. 143; *Snodgrass v. Gavit*, 28 Pa. St. 221; *Kahnweiler v. Ins. Co.*, 67 Fed. Rep. 483; *Wright v. Ins. Co.*, 110 Pa. St. 29.

But both from the answer of Morris, and from the evidence, it conclusively appears that the difference upon which the right to demand an arbitration was dependent, never arose. The complaint averred that the plaintiff and his assignors had performed the covenants and agreements to which the contract bound them. If they had, there was no occasion for difference. The answer denied knowledge or information sufficient for the formation of belief as to whether or not they had performed their contract. This form of pleading is a method provided by the code, of putting in issue allegations of the complaint, the facts concerning which are not presumptively within the knowledge of the defendant. If the facts are presumptively within his knowledge, this form of denial controverts nothing. It amounts to an admission. Whether or not there was a compliance by the plaintiff and his assignors with the terms of the contract, was, we think, presumptively within the knowledge of Morris. The contract was with him; it bound him to the payment of specific sums, at stated times, in case it was complied with; he was directly interested in its performance; he was bound to know what was done under it, in order to know what his liability might be, and the facts were easy of ascertainment. We think, in view of the relation of Morris to the contract, that his denial of knowledge or information left the allegation of performance admitted. But giving to the denial all the effect it could possibly have if properly made, it amounts to nothing more than an averment that Morris, at the time of filing his answer, did not know whether the contract had been complied with

or not. There could, so far as he was concerned, have been no dispute over a matter about which he knew nothing; and his answer is therefore conclusive upon him that there was no dispute, and, consequently, no occasion for arbitration.

But when we turn to the evidence we find that, as a matter of fact, there was no disagreement whatever between Morris and the plaintiff. The plaintiff testified that when he spoke to Morris about payment, the latter said that he was expecting some money soon, and would pay the amount in a short time. The following is from the testimony of Morris:

"Q. You haven't paid Mr. Fravert the last two payments provided for in that contract, or any portion of that, have you?

"A. I have not. I never said I objected to paying him, but the fact of my not having paid him, I should think, would be a sufficient objection. I never made any formal objection.

"Q. why didn't you pay him.

"A. In the first place I was hard up; if I hadn't been hard up I would not have paid him, for I did not think I was getting value received.

"Q. You never made such objection to him, did you?

"A. No, I did not."

It appears from this that whatever, in the nature of dissatisfaction, Morris may have harbored, he kept carefully concealed, and avoided making it the subject of difference between himself and the plaintiff. In the face of his testimony it is idle to discuss the case of the stipulation to arbitrate. The judgment below was based on a wholly untenable theory, and must be reversed.

*Reversed.*