## A. M. STEWART AND JAMES C. STEWART, CO-PARTNERS DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF JAMES STEWART & COMPANY *v.* Z. S. SPALDING.

## No. 904.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

HON. W. L. WHITNEY, JUDGE.

ARGUED AUGUST 28, 29, 1916.        DECIDED NOVEMBER 17, 1916.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

CONTRACTS—*arbitration—condition precedent to action.*

Where, by the terms of a contract, an obligation to submit a question to arbitration depends upon a condition precedent, as that a disagreement shall have arisen, the party who sets up the agreement as a condition precedent to the maintenance of an action upon the contract must show that a disagreement did occur whereby a question to arbitrate was raised.

SAME—*building contract—departure from terms.*

Where a building contract provides that no alterations shall be made in the work except upon the written order of the architect, and no extra compensation shall be due the contractor for work or material except in accordance with a written agreement or by order of the architect with the approval of the owner, and it is shown that the requirements were not lived up to, but that verbal orders were given, received and acted upon, neither party may set up the provision of the contract to defeat the just claims of the other.

SAME—*same—parol evidence not admissible to vary.*

In an action on a contract for the erection of a building for an agreed price in accordance with certain plans and specifications, the contract containing a provision as to further compensation for extra work, parol evidence that at the time the contract was entered into a different understanding was had as to the amount of work to be done for the agreed price is not admissible.

SAME—*same—time—waiver—action on express contract.*

Though time be of the essence of a building contract and performance within the time specified is not shown, an action on the express contract may nevertheless be maintained if the requirement as to time was waived by the owner, and the plaintiff may recover by showing that he completed the work in a reasonable time after the date named in the contract.

WAIVER—*question of law or fact.*

The question of waiver is usually a mixed one of law and fact for the jury, but where the facts are undisputed and are susceptible of but one reasonable inference it becomes one of law for the court.

ACCOUNT STATED—*admission—promise to pay.*

Liability upon an account stated implies an admission of indebtedness in a definite sum and a promise, express or implied, to pay the same. The admission and promise will be implied from the receipt and retention of an account without making objection thereto within a reasonable time, but if the conduct of the party to whom the account was rendered was such as to exclude the idea of acquiescence an account stated is not shown.

ARCHITECTS—*effect of certificate.*

The certificate of an architect that a certain sum is due the contractor, which contains the statement that "it is not to be interpreted as an acceptance of any work or material which is defective, or which is not in accordance with the contract, and in making payment under it the owner reserves the right to hold the contractor strictly responsible for defective work or material, or for any violation of the contract," is no more than *prima facie* evidence that certain work has been done and the contractor is entitled to the compensation specified, and does not constitute an admission binding on the owner, in the absence of proof of fraud or collusion, that the work has been fully completed in accordance with the contract.

SAME—*authority to change terms of contract.*

In an action upon a building contract where it appeared that an owner accepted an offer of a contractor for the erection of a building upon certain terms and a contract embracing those terms was prepared, and thereafter the architect, in the absence of the owner, agreed with the contractor that some of the terms should be changed, an instruction to the jury to the effect that the action

of the architect was not binding on the owner in the absence of proof of ratification by him unless the architect had been specially authorized to change the terms of the contract held erroneous, there being no evidence that the architect had been given such authority.

### OPINION OF THE COURT BY ROBERTSON, C. J.

The plaintiff in error was the defendant in an action of assumpsit tried in the circuit court with a jury wherein judgment was entered against him in the sum of $57,038.76. The plaintiffs' complaint included four counts. The first count was upon a contract in writing bearing date the 29th day of July, 1909, and alleged to have been modified by certain letters dated August 3 and 10, 1909, for the construction of a building at Portland, Oregon, a balance of $54,506 being claimed to be due and unpaid under said contract. The second count was in *quantum meruit* for the reasonable value of the material furnished, and the work and labor performed in the erection and completion of the building. The third count was upon an account stated wherein it was alleged that in the month of February, 1911, the parties found to be due, and the defendant promised to pay, the sum of $54,506. The fourth count was in *quantum meruit* for the value of additional work, including the furnishing of material and labor, upon said building not covered by the contract. The defendant, in his answer, denied that there remained an unpaid balance due the plaintiffs under the contract or otherwise, and claimed that the sum of $26,500 had been improperly charged against him, and that he had been damaged by reason of delay in the completion of the building and by defective construction, in the sum of $25,811.25. The jury returned a verdict for the plaintiffs in the sum of $38,847.63, with interest from February 3, 1911.

At the outset there is a dispute as to what the contract between the parties was. The evidence showed that the plaintiffs by a letter dated at New York on July 29, 1909, addressed to the defendant at that city, made alternative offers based upon plans and specifications prepared by one Cass Gilbert, an architect, the second of which was as follows:

"2. We will erect this building on a percentage basis, you paying only the exact cost of the building with the changes made in the plans and specifications, as estimated, Four Hundred Eighty-two Thousand, Three Hundred Fourteen Dollars ($482,314.00); you paying us for our services Eight Per Cent (8%) of the actual cost of the building, or, if you prefer, we will make a fixed commission of Thirty-eight Thousand Dollars ($38,000.00) on the building erected in accordance with the changes now outlined, subject to any increase for any additional work done not now determined upon; our employment under this proposition being arranged for practically in accordance with the contract which I showed you some months ago, made between us and the owners of the First National Bank Building, Denver, which we are now erecting, which contract provides:

"That we shall furnish at our expense such machinery, tools and equipment as are necessary for the prompt erection of the building;

"That we will make every effort to adopt every practical means to reduce the cost of the building as far as possible;

"That we will keep separate accounts, files of letters, etc., for this work;

"That we will furnish monthly statements of all materials entering into the building, payrolls, and amounts due to sub-contractors;

"That we will maintain an office in Portland;

"That we will attend to the question of insurance, employer's liability, etc."

The defendant accepted the offer on the fixed commission basis with the modification, mutually agreed upon, to the effect that should the contractors effect a saving on the

total cost without modifying the quality or extent of work or materials they should receive an additional 10% commission on the amount of such saving. The defendant left New York for Europe on August 1. On August 3 A. M. Stewart addressed a letter to Cass Gilbert saying, among other things:

"In order that there may be no question with Col. Spalding as to what items enter into the cost of the building in ascertaining finally what is the actual cost, and there may not be charged against our commission certain payment which really enter into the cost of the work, we desire to have added to the specifications, or to the contract a clause clearly stating this understanding, and I would suggest the following, viz:

" 'In calculating the cost of the building under this contract there shall be included therein the amount of all sub-contracts, of all material entering into this construction, and the wages of all persons employed upon the building, also the cost of all permits, surveys, temporary office with telephone and supplies, temporary heat, light, enclosures, floors, bridges to the sidewalks, etc., temporary water closets, and other plumbing, freights on all materials, equipment and tools, liability insurance, and repairs to streets or to the adjoining property.' "

Replying thereto on August 10 Gilbert wrote:

"As to the second and third paragraphs of your letter, I think there can be no question 'as to what items enter into the cost of the building in ascertaining finally what is the actual cost.' The general conditions of the specifications are clear on this subject and I find your statement of the case to be correct on the subject as follows: 'In calculating the cost of the building under this contract there shall be included therein the amount of all sub-contracts, of all material entering into its construction and the wages of all persons employed upon the building, also the cost of all permits, surveys, temporary offices with telephone and supplies, temporary heat, light, enclosures, floors, bridges to sidewalk, etc., temporary water closets, and other plumbing, freights on all materials, equipment and tools, also

liability insurance and repairs to streets or adjoining property.' "

A contract was drawn up by the architect and the plaintiffs signed the same on August 27, and the defendant signed it on his return from Europe on September 11. A clause in the specifications which were made part of the contract provided that "The contractor is to provide derricks, hoists, machinery, scaffolding, tools and appliances of every description required for the proper execution of this work." It was also provided in the specifications that "The general permit for the erection of the building will be obtained by the architect at contractor's expense. The contractor shall obtain and pay for all other permits which may be required by the city laws and regulations." Thus appeared a flat contradiction between the terms of the offer made by the plaintiffs in their letter of July 29 and the contract executed by the parties, on one hand, and the terms of the letters of August 3 and 10, on the other. The cost of tools and equipment, permits, liability insurance, and the maintenance of a temporary office in Portland constituted a part of the plaintiffs' claim and was admitted in evidence over the objections of the defendant. The court instructed the jury that "The burden is also upon the plaintiffs of proving by a preponderance of the evidence that the letters of August 3, 1909, and August 10, 1909, between the architect and the plaintiffs were ratified by the defendant. If you find that they were so ratified, then the written contract was to that extent modified. But if you find that they were not so ratified, then I instruct you that the architect, unless specially authorized so to do, could not vary the terms of the written contract between the plaintiffs and defendant." Counsel for the defendant conceded that if the letters in question were brought to the defendant's attention and had been ratified by him they should be regarded as having modified the contract. Their

contention is that there was no evidence which would have authorized the jury to find a ratification by the defendant. The defendant testified that the letters had not been shown or read to him. Mr. Gilbert testified that on September 11 he showed the letters to the defendant, read them to him and told the defendant that he had proceeded on the basis of them and that the defendant approved the action. In reply to a question as to whether the defendant had expressed his approval, the witness said, "There was no expression of disapproval, and my memorandum shows that he did approve, but just what was the language I am not able to say." This was objected to and there was a motion to strike on the grounds that it was a mere conclusion and that it referred to a memorandum which was not produced. We think there was merit in the objection, but we think also that there was sufficient evidence which went in without objection irrespective of the last answer to carry the question of ratification to the jury. But the point made on behalf of the plaintiff in error that the instruction given was erroneous in that it left it to the jury to say whether the architect had been specially authorized to vary the terms of the written contract between the parties, we believe to be well taken. The new terms introduced by the two letters amounted to the making of a new contract, and we find no evidence in the record to show that the architect was authorized to make a contract on behalf of the defendant. In this connection is to be considered also the admission in evidence over the defendant's objection of a copy of a contract made between James Stewart & Co. and the Puget Sound Realty Associates Corporation, dated March 15, 1909, for the erection of a building in Denver, Colorado, being the contract referred to in plaintiffs' letter of July 29. The evidence seems to have been introduced upon the theory that it was relevant on the point whether the things included under the term "cost" in the

letters of August 3 and 10 should be paid for by the owner or the contractor. The contract in question was irrelevant and ought not to have been admitted. It constituted no part of the contract between the parties to this action. The question whether the plaintiffs' proposition as stated in their letter of August 3 had been accepted and had become a part of the contract depended on whether defendant in fact knew of and acquiesced in the reply made thereto by the architect. Nothing contained in the contract with the Denver concern could throw any light on that question.

At the close of the case for the plaintiffs the defendant moved for a directed verdict on the grounds that no evidence had been adduced to show (1) that the parties had agreed on the amount to be paid or allowed on account of alterations or changes alleged to have been directed to be made in the construction of the buildings as provided by article III of the contract; or (2) that the plaintiffs have selected or asked the defendant to select arbitrators to fix the amount to be paid for such alterations or changes; or (3) facts excusing plaintiffs from the selection or attempt to select such arbitrators; and (4) that the performance of the work, or furnishing of the materials, for or on account of alterations or changes (except in a few specified instances) was in accordance with any written agreement or by written order of the architect with the approval of the owner as provided in the specifications. The contention was that as the aggregate charge made in the plaintiffs' account for changes made in the building during the course of construction exceeded the amount claimed by the plaintiffs in this action the plaintiffs could not recover because the extra charges had not been incurred in the manner provided in the contract and specifications. Article III of the contract provided that "No alterations shall be made in the work except upon written order of the architect; the amount to be paid by the owner or allowed by the con-

tractors by virtue of such alterations to be stated in said order. Should the owner and contractors not agree as to amount to be paid or allowed, the work shall go on under the order required above, and in case of failure to agree, the determination of said amount shall be referred to arbitration as provided for in Art. XII of this contract." The trial court construed the article to mean that the architect, as agent of the owner, was given authority to order alterations and also to set the price of such alterations, and that the acceptance of that price by the contractors would close the matter. We think that the owner as well as the contractors had the right to dissent from the prices fixed by the architect, but, though there was some criticism, there was no evidence of a definite dissent coupled with a request to arbitrate. The prices for alterations fixed by the architect having been accepted by the contractors and no disagreement or request for arbitration having been expressed by the defendant there was nothing to arbitrate, and no obstacle existed to the institution of the action. See *Schmulbach* v. *Caldwell,* 196 Fed. 16, 23; *Foster* v. *McKeown,* 192 Ill. 339, 349; *Burke* v. *Dittus,* 8 Cal. App. 175, 178; *Fravert* v. *Fesler,* 11 Colo. App. 387, 391. Where, in a case of this kind, the obligation to submit a question to arbitration itself depends upon a condition precedent, as that a dissent from the price fixed by the architect has occurred, the party who sets up the agreement as a condition precedent to the maintenance of an action upon the contract must show that a dissent was expressed and a question to arbitrate raised. We find nothing to the contrary in the cases cited in this connection by the plaintiff in error. In *Holmes* v. *Richet,* 56 Cal. 311, the architect was not authorized to put a value on the extra work. The contract provided that "should any dispute arise respecting the true value of the extra work or works omitted" the value should be fixed by arbitrators, and it appeared that "difficulties had arisen respecting the

true value of the extra work," hence, the court held that "no right of action accrued to the contractor for the extra work done by him until the same was valued, or some good and sufficient excuse for a failure to value the same in accordance with the agreement was shown." A clause in the specifications provided that "no extra compensation shall be due the contractor for the performance of any work or furnishing of any material, except in accordance with written agreement or by written order of the architect with the approval of the owner." The approval of the owner was not required to be in writing and under the circumstances shown it was a fair question for the jury whether the owner did not approve some or all of the orders given by the architect. There was evidence that in several instances the owner himself had ordered changes to be made for which extra compensation might be claimed, and if the parties did not live up to the requirement of the specifications neither could set it up to defeat the just claims of the other. *Kilby Mfg. Co.* v. *Hinchman-Renton F. P. Co.*, 132 Fed. 957; *Smith* v. *Gugerty*, 4 Barb. 614, 623. The motion for a directed verdict was correctly overruled.

A difference of opinion arose between the parties as to whether the cost of the subdivision of certain floors of the building into offices was included in the contract price or could properly be made the subject of an extra charge. The contract provided for the construction and completion of the building "as shown on the drawings and described in the specifications" which "become hereby a part of this contract." Neither the contract itself nor the specifications mentioned the number of floors which the building was to contain or how they were to be subdivided, but the plans showed a basement, twelve floors and an attic. The dispute concerned the second, third, fourth, fifth, tenth, eleventh and twelfth floors, the plans of which showed what were spoken of as "loft" floors, that is, floors without par-

titions save for lavatories and a general partition dividing the common corridor from the space which would be subdivided into rooms. The defendant testified to his understanding that the drawings for those floors showed no subdivisions of rooms for the sole reason that the arrangement of rooms was to be left in abeyance until the wishes of the prospective tenants could be ascertained, and that, when decided upon, the contractor would be notified, and the partitions put in accordingly, and that this work was included in the contract price. This understanding was based on a conversation which the defendant had with Stewart in the preliminary negotiations between them. The plaintiffs contended that the contract required them to do no more work than was called for by the plans and specifications, and that as the subdivision of the floors in question was not therein required the cost thereof, when the work was directed to be done, was properly made the subject of an extra charge. Evidence on the point was admitted and the defendant asked that it be left to the jury to decide as a question of fact, but the court ruled that as a matter of law the contract price did not include the cost of the subdivision of those floors, and instructed the jury accordingly. The argument advanced on behalf of the plaintiff in error is that the entire agreement between the parties was not reduced to writing; that parol evidence was admissible to show the portion of the contract which was not in writing; and that it was for the jury to decide whether there was in fact an agreement that the contract price would cover the subdivision of all the floors. Whether or not a written contract was intended by the parties to cover the whole agreement between them is to be decided from the character and form of the contract and the evidence of the surrounding circumstances under which it was made. There is a conflict of authority on the point as to whether the parties intended to express the whole of their agree-

ment in the written instrument presents a question of law or of fact. See 17 Cyc. 748; 4 Wigmore on Evidence, Sec. 2430. But we believe there is no such conflict where it appears that the terms which it is claimed were verbally agreed upon are inconsistent with the provisions of the writing. In such cases the rule which excludes parol evidence in contravention of the terms of a valid written agreement applies. In an action on a contract for doing certain work according to certain plans and specifications and containing a provision as to compensation for extra work evidence that at the time the contract was entered into a different understanding was had on that point is not admissible, or if admitted will not affect the construction of the instrument. *Merritt* v. *Peninsular Const. Co.,* 91 Md. 453; *Wood* v. *Fort Wayne,* 119 U. S. 312; *Kilby Mfg. Co.* v. *Hinchman-Renton F. P. Co., supra,* at page 963. An independent collateral agreement may be proved by parol though it rests upon the same consideration as the written contract if it is not inconsistent with the terms of the contract. *Cummings* v. *Pioneer B. & L. Assn.,* 18 Haw. 349; *Durkin* v. *Cobleigh,* 156 Mass. 108. But that is not the situation here. In the case at bar the contract obliged the contractor to do extra work if directed and provided that he should receive extra compensation therefor. Evidence that the contractor had agreed to erect certain partitions not called for by the plans without additional remuneration tended to vary the terms of the written contract. Whether the matter sought to be proved was inconsistent with the instrument signed by the parties was a question of law, and the court made no error in charging the jury as it did.

The case was submitted to the jury upon all four counts of the complaint. The jury were instructed that should they find for the plaintiffs upon either of the *quantum meruit* counts no interest should be allowed, and

as the verdict included interest it is presumed that it must have been found under either the first count, upon the contract, or the third count, upon the account stated. The plaintiff in error contends that as a verdict under the first count it was against the law and the evidence and that there was error in the instructions relating to recovery on the contract, also that the case ought not to have been submitted to the jury on the third count as there was no evidence tending to prove an account stated.

The agreed compensation payable to the contractors for the erection of the building under the contract was $482,314, for work and materials, and $38,000, contractors' commission, with the further provision for an additional commission upon a saving in the cost of work and materials as above stated. The total cost of the completed building, according to the statement rendered by the plaintiffs, including all charges for alterations, additional work and commissions, was $562,267.42, upon which payments had been made amounting to $505,665.03. The contract provided that the banking room (first floor) should be completed on or before March 1, 1910, and the remainder of the building on or before July 1, 1910. From evidence adduced the jury could have found that the building had been substantially completed in the manner required by the contract and the orders for changes and additions, and that the delay in its completion resulted entirely from the alterations and additional work ordered from time to time by the defendant and the architect. On the other hand the evidence would have warranted a finding that the making of the changes and additions did not account for all of the delay. There was evidence to the effect that the first floor was completed within the time specified, and that the remainder of the work was not finally finished until January 5, 1911. The last or "final" certificate issued by the architect was dated February 6, 1911. It was pro-

vided in the specifications that "The contractor will be credited with one day's extension of time for the completion of the work for each day's delay caused him by the orders or acts of the owner or of the architect in requiring suspension or delay of operations on account of modifications. * * * In order to receive credit for delays the contractor must make and file with the architect a written claim for allowance of time on account of delays caused within a reasonable time of the occurrence of same; but the time shall not be extended unless such claim is found by the architect to be reasonable, and that contractor is fairly entitled to such allowance under this agreement." There were 67 orders given for changes and additions, the first, and only one for which time (three weeks) was specifically allowed, occurring before the contract was actually signed, and the last one in September, 1910. On July 1, 1910, Spalding complained to Gilbert in regard to the uncompleted condition of the building, and there was some correspondence between Gilbert and Stewart & Co. on the subject in which the former called the attention of the latter to the fact that they had not completed the building on time, and notified them that Spalding did not waive the condition. Stewart & Co. attributed the delay to the changes which had been ordered. On January 31, 1911, they wrote Gilbert, enclosing a statement of the change orders, stating that they had resulted in the contractors being kept on the job until January 5, and asking that the architect so certify, though expressing their opinion that the contract did not require that extensions of time for making changes should have been obtained by the contractors. Gilbert had informed Stewart & Co. that it was not for him to adjust claims growing out of delays and it does not appear that he made any certificate that the delay in completion was attributable to the changes ordered though he gave evidence that such, in his opinion, was the

fact. The certificate issued did not amount to a consent to or approval of the delay. *Stephens* v. *Essex County Park Commission,* 143 Fed. 844, 849. The instruction requested by the defendant to the effect that the plaintiffs not having obtained extensions of time for completing the building as provided for in the contract no recovery could be had under the first count upon the express contract since time was of the essence, was properly refused. Though time be of the essence of a contract and performance within the time specified is not shown, an action on the contract may nevertheless be maintained if the requirement as to time has been waived. *Phillips etc. Const. Co.* v. *Seymour,* 91 U. S. 646, 651; *Maryland Steel Co.* v. *United States,* 235 U. S. 451, 457. No direction or instruction was given on the subject of waiver. The defendants in error contend that Spalding waived the time for performance by making payments on account after the contract time for performance had passed, by permitting the contractors to continue the work, and by occupying portions of the building as they were completed. And, it might have been added, by giving further orders for alterations. The contract contained a clause providing that upon the architect's certifying that the contractors had refused or neglected to prosecute the work with diligence the owner should be at liberty to terminate their employment and complete the work at their expense. Perhaps no one of those facts, standing alone, could be regarded as conclusive evidence of waiver or even sufficient to carry the question to the jury for decision, but we believe that the combination of circumstances, shown by undisputed evidence, was consistent only with the view that the contract was regarded as still subsisting, and warrants only one reasonable inference, which is that Spalding waived the contract requirement. The position taken by him that he was entitled to damages because of the delay was not inconsistent with an intention to waive the require-

ment as to time since he could still insist upon a claim for damages for any delay caused by the plaintiffs. *Crocker-Wheeler Co.* v. *Varick Realty Co.*, 88 N. Y. S. 412. See also cases last above cited. The question of waiver is usually a mixed one of law and fact for the jury, but where the facts are undisputed and are susceptible of but one reasonable inference it becomes one of law for the court. 40 Cyc. 271; *Hollings* v. *Bankers' Union*, 41 S. E. (S. C.) 90; *Zwietusch* v. *Luehring*, 156 Wis. 96, 114; *Reed* v. *Bankers' Union*, 121 Mo. App. 419, 426; *Keller* v. *Robinson*, 153 Ill. 458, 468; *Winnesheik Ins. Co.* v. *Schueller*, 60 Ill. 465, 470. See also *Dunn* v. *Steubing*, 120 N. Y. 232; *Bigler* v. *Ferry Co.*, 5 N. Y. S. 347; *Paddock* v. *Stout*, 121 Ill. 571. The court should have ruled that the defendant had waived the time stipulated in the contract for the completion of the building. The evidence was such as to require the submission of the case to the jury upon the count on the express contract. But the instruction given to the jury to the effect that they should find whether written claims for extensions of time were filed within a reasonable time of the occurrence of delay and were found by the architect to be reasonable, and that the decision of the architect would be binding if the jury should find that it was made within the powers given him by the contract, and that if they should find that no such extension had been obtained the plaintiffs could not recover upon the first count, was erroneous. There was no evidence, except as to one extension of three weeks, over which there was no controversy, that any request for extension of time was made in writing within a reasonable time of the occurrence of delay. And it was not for the jury to say whether a decision of the architect was within his powers under the contract. Furthermore, there was no evidence, except as to the one instance mentioned, that the architect had made any decisions upon applications for extensions. The question for the jury to

decide upon the evidence was whether or not the plaintiffs had completed the building in a reasonable time after the date specified in the contract. The waiver by the owner of the time specified in the contract did not operate to give the contractors an unlimited time in which to finish the work. In order to recover on the express contract the plaintiffs were obliged to show that they had completed the work in a reasonable time. See *Lapp-Gifford Co.* v. *Muscoy Water Co.,* 166 Cal. 25, 30; *O'Loughlin* v. *Poli,* 82 Conn. 427, 436. If the work was finished in a reasonable time, or, in other words, if the changes ordered to be made fully accounted for the delay, the plaintiffs could recover on the first count of their complaint and the defendant would not be entitled to recoup any damages for delay, whereas, if the changes ordered did not cause the whole delay, and the failure to complete the building in a reasonable time after the date named in the contract was the fault of the contractors, recovery could not be had on the first count, but only in *quantum meruit* for the reasonable value of the work less such damages as the defendant might prove.

The plaintiff in error contends that the court erred in authorizing the jury to find for the plaintiffs upon the third count in the complaint. The court charged the jury, in substance, that if they should find from the evidence that upon the completion of the building the defendant received a final account, making objection to certain items therein and making no objection within a reasonable time to other items in the account then the law presumes that he admitted the items not objected to to be correct, and the burden would be upon the defendant to rebut the presumption, and that in determining whether or not the defendant did object to items within a reasonable time the jury could take into consideration the magnitude and complexity of the account and all other facts relative thereto. The record

shows that the final account of the plaintiffs against the defendant which was forwarded to him through the architect showed a balance due them of $56,602.39. The amount claimed in this case under plaintiffs' amended complaint, and for which the jury were authorized, under the instruction, to find for the plaintiffs, was $54,506. There was no evidence that the defendant objected to any specific items in the account. Although the account contained a great mass of figures the several statements, other than those showing the charges made for extra work on change orders, were of a general character. There was evidence showing that the account was sent by Gilbert to the defendant at San Francisco on January 10, 1911, where it reached him, it may be presumed, in the ordinary course of the mail. On January 23 the defendant wrote Gilbert acknowledging the receipt of "another large lot of statements of Stewart & Co." which he was "unable to fathom;" making some general complaints as to the delay in completing the building, the conduct of the work, and the manner in which the account had been made up; criticizing the architect as well as the contractors; asking for further information; finding fault on the subject of washbowls, saying, "I understand there are a large number of bowls that were never set up as well as a number that were condemned;" and saying further that "If Stewart absolutely refuses to consider the question of delay and considers he is entitled to pay according to the statements he has rendered, without further explanation or approval on your part, I shall have to consult my lawyer about further action." On receipt of that letter Gilbert again called the attention of Stewart & Co. to the matter of delay. In a letter addressed to Gilbert by Stewart & Co. on January 31 they stated their position that the delay was caused by the changes which had been ordered, and concluded by saying, "If any certificate is required from you, which we doubt, we think you

should certify that the extra orders in this case caused us a delay—if that is the proper word to use—until January 5, 1911." On February 6, 1911, Gilbert wrote Spalding a letter in reply to his of January 23 explaining certain matters and giving further information. A copy of Stewart & Co.'s letter of January 31 was enclosed, and this comment made, "Over $70,000 of extras (or in excess of one-eighth of the total volume of the work) were added to the original contract, much of this was added very late in the season and judging from my experience I believe it improbable that you could force a penalty for delay under the circumstances. I would therefore unhesitatingly recommend against it because I believe it would not succeed and would only lead to fruitless expense on your part. Of course what might be accomplished by negotiation in this direction is a different matter; it is possible that they might make some adjustment in settling with you but I am not encouraged to think even this possible now." The letter referred to certain things about the building which required the attention of the contractors and said, "I understand finally from your letter that you want me to prepare a final certificate upon which you can take action. I therefore enclose herewith such certificate deducting therefrom the sum of $1500 to cover the cost of the minor items which are above referred to as needing repairs." In the meantime Spalding went to Portland and had the building examined, and on February 23 wrote to Gilbert enclosing a report of experts on alleged defects in the building and saying, "I find their (Stewart & Co.'s) lawyers have entered a lien on the building, but have not heard what they intend to do further; and I am not aware of their giving any attention to the matters of delays and losses incurred by the conditions I have reported." That letter having been referred to Stewart & Co., they replied thereto in a letter to Gilbert dated April 18, wherein, after referring specifically

to the various claims of defects, they said, "You will note from the above that all the matters referred to in report sent by Col. Spalding have received attention, either have been done or ordered to be done, with the exception of the heating system, which we are investigating; the cracks in the mosaic floor; the moisture in the attic walls which we do not deem it our duty to remedy; and the 'dish' in the oil tank which we believe has been installed in accordance with instructions * * * and in dealing with these matters you will, of course, understand that we do not in any way waive or prejudice our claim that Col. Spalding is in default on his final payment for the building, which is the subject matter of our claim against him in Oregon." This evidence consisting of undisputed correspondence clearly negatives the idea that the defendant accepted the plaintiffs' account as showing the correct balance due them under the contract. Liability upon an account stated implies an admission of indebtedness in a definite sum and a promise, express or implied, to pay the same. The action is upon the new promise and not on the original indebtedness. See *Scott* v. *Hawaiian Tobacco Plantation,* 21 Haw. 493. The admission and promise will be implied from the receipt and retention of an account without objection made within a reasonable time, but a specific objection to certain items or a denial of all liability is not necessary to be shown to defeat a claim for where, as in the present case, the conduct of the party excludes the idea of acquiescence, an account stated is not shown. 1 C. J. 694; *Ault* v. *Interstate Sav. Assn.,* 15 Wash. 627; *Quincey* v. *White,* 63 N. Y. 370, 377. We hold that there was no evidence from which the jury could have found that the defendant admitted an indebtedness in the sum of $56,602.39 or $54,506, or any other definite amount, and that error was committed in submitting the case to the jury on the count alleging an account stated.

Error has been assigned with reference to an instruction which was given to the jury as to the effect of the architect's so-called final certificate. It is not contended that the plaintiffs may not maintain this action for the lack of a final certificate, though it is argued that none such was issued. The objection goes to the construction placed by the court upon the certificate which was issued and leaving it to the jury to say whether it was issued as a final certificate under the contract. It was provided in the contract that "The final payment shall be made upon satisfactory completion of the work included in this contract, and all payments shall be due when certificates for the same are issued," and that "It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or payment, shall be conclusive evidence of the performance of this contract, either wholly or in part." It may be assumed for present purposes that if the architect had issued a certificate to the effect that the contract had been fully performed by the completion of the building it would have constituted conclusive evidence of the fact. But it has been pointed out that the last certificate issued by the architect, which was spoken of at the trial as the "final" certificate, was in the same form as the intermediate certificates and contained on its face the statement that "This certificate, whether issued as final or otherwise is an opinion only, and is in no sense a guarantee on the part of the architect. It is not to be interpreted as an acceptance of any work or material which is defective, or which is not in accordance with the contract, and in making payment under it the owner reserves the right to hold the contractor strictly responsible for defective work or material, or for any violation of the contract." The court instructed the jury that "The contract provides that 'the final payment shall be made upon satisfactory completion

of the work included in this contract, and all payments shall be due when certificates for the same are issued.' The final certificate of the architect, if you find that such was issued in accordance with the contract, is a direct admission by him as agent for the defendant, that the building was, at the time of issuance, completed in accordance with the plans and specifications, and the defendant is bound thereby, except in case of fraud or such gross mistake on the architect's part as would necessarily imply bad faith or a failure to exercise an honest judgment, or collusion between the architect and the plaintiffs. Fraud, bad faith and collusion are not to be presumed, and the burden of proving that fraud, bad faith, or collusion existed in the mind of the architect at the time of signing the certificate is on the one asserting its existence." It is objected that this instruction which coupled the court's view of the conclusiveness of the certificate with the maturity of the final payment under the contract was tantamount to a direction that if the jury should find that the certificate was issued "in accordance with the contract" it was an admission binding on the defendant that the amount certified to by the architect was due and payable to the plaintiffs unless the defendant had proven that the certificate was fraudulently issued. The objection is well taken. We think the certificate was no more than *prima facie* evidence that the contractors had done a certain amount of work which entitled them to receive the sum of $55,102.39, and that upon their making certain repairs or remedying certain defects the building would be completed according to the plans and specifications and the contractors would be entitled to the additional sum of $1500. The certificate contained nothing that could be construed as a representation that the building had been actually and finally completed in accordance with the contract. It, therefore, was not such a final and conclusive certificate as, we assume, was con-

templated by the provision of the contract above quoted.

The judgment of the circuit court is reversed and set aside, and a new trial is granted.

*W. B. Lymer* (*Lindsay & Lymer* on the brief) for plaintiff in error.

*M. F. Prosser* and *A. M. Cristy* (*Frear, Prosser, Anderson & Marx* and *A. M. Cristy* on the brief) for defendants in error.