## M. SAIKI AND T. MATSUMOTO *v.* LEE SING.

### No. 1417.

EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT.
HON. J. T. DeBOLT, JUDGE.

SUBMITTED MAY 29, 1923:            DECIDED AUGUST 28, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

APPEAL AND ERROR—*exceptions.*

Objections not raised in the court below cannot be raised for the first time on appeal.

CONTRACTS—*building contract—departure from terms—waiver.*

A provision in a building contract that no alterations shall be made in the work except upon the written order of the owner may be waived by the parties.

TRIAL—*misconduct of counsel.*

> During the progress of the trial of an action seeking to recover
> for the erection of a building counsel for plaintiffs requested
> permission to cut through the floor and dig about the building
> for the purpose of demonstrating some of the claims of plaintiffs
> with regard to the nature of the work done. Upon the objection
> of defendant to this request the trial court ordered the request
> to be stricken from the record and instructed the jury to entirely
> disregard the request and the remarks of counsel in relation
> thereto. Held, that the conduct of counsel in making such
> request was not so prejudicial to the rights of defendant as to
> warrant this court's setting the verdict of the jury aside.

### OPINION OF THE COURT BY LINDSAY, J.

This was an action in assumpsit brought by plaintiffs to recover the sum of $9079, the amended complaint alleging that, within eighteen months prior to the commencement of this action, plaintiffs furnished labor and material to defendant the reasonable value of which was $18,552.07 less certain allowances; that the said sum of $18,552.07 is represented by the items of a contract between the parties and by certain extra or additional charges for labor and materials ordered by defendant in and about the building of a theatre building by plaintiffs for defendant; that on account of said sum of $18,552.07 defendant has paid and been credited with by plaintiffs certain sums and allowances leaving due and owing by defendant to plaintiffs $9278.32 but that plaintiffs have sued upon and are willing to accept the sum of $9079 in full settlement of their claim.

The case was tried before a jury which returned a verdict in favor of plaintiffs for $8579. Defendant has brought the case here on exceptions which lie to the trial court's rulings on the admission of evidence, in refusing to strike certain evidence introduced on behalf of plaintiffs, in giving the jury certain instructions on behalf of plaintiffs, in refusing to give the jury a certain instruction requested by defendant, in entering judgment on the

verdict of the jury, and in overruling defendant's motion for a new trial.

From the evidence it appears that defendant and plaintiffs on February 16, 1920, entered into an agreement under the terms of which the defendant agreed to provide all materials for the construction of the building in question in accordance with the plans and specifications prepared by one Chang Chan, an architect, also all materials for wiring said building and for the installation of an electric system therein. The plaintiffs, on their part, agreed to furnish all the labor required for the erection of the building and the installation of the electric system for the sum of $4250. The building as originally planned was to be a one-story structure about eighty-nine feet long by sixty-seven feet wide, the front to be of concrete and the side and rear walls to be of corrugated iron. Plaintiffs had practically completed the work contemplated in the original plans when, owing to certain objections by the building authorities, a new architect, Mr. H. L. Kerr, was employed by the defendant to change the plans so as to meet these objections. The change thus made was to turn the building into a stone one, and the building as finally completed was of that material. The building was also lengthened ten feet in the rear and raised four feet in height and a balcony or gallery put in, the raise of four feet applying to the whole length of the building on all sides, and many other changes were made. Mr. Kerr testified that although he was not officially engaged to superintend the erection of the building, he "kept his eye" on the work, visiting it three or four times a week throughout the construction and that the building was finished by plaintiffs in good workmanlike manner.

The first exception relied on by appellant (Exception 2) is that "The Court erred in admitting over objection

a certain list identified by the witness Kerr as being a correct statement of the extras sued on, the list being plaintiffs' Exhibit 'G'."

The witness Kerr, after having testified to various and sundry changes made to the building as originally planned, was shown a paper purporting to contain a list of changes and extras in the building. On the bottom of this paper was written "O. K. H. L. Kerr." Mr. Kerr testified that the signature was his and that he had gone over and checked the items contained in said list shortly after the completion of the building. He was then asked by counsel for plaintiffs: "Q Can you state now whether the list which I have in my hand now is a full list and correctly represents all of the work that was done, to your knowledge, on this building, after your employment, and whether or not it includes any work which was not done?" Counsel for defendant objected to the question "as incompetent, irrelevant and immaterial, on the ground there is no showing yet that the witness is in position to state whether all this work was done or not, and no showing as yet that the witness is qualified to speak as to the work having actually been done." The court then asked the witness: "Referring to the list that Judge Lymer showed you, can you say whether or not that corresponded to the work actually performed upon the building at that time? A That took in all the changes that had been completed when the building was completed and had been taken over." The court then overruled the objection, to which ruling counsel for defendant excepted. The list was then offered and received in evidence as plaintiffs' Exhibit "G" without objection on the part of defendant, hence the exception now urged that the court erred in admitting said list is not well taken for, as has been repeatedly held by this court, objections which have not been saved in the court below

cannot be raised for the first time on appeal. *Stanley* v. *Akoi*, 12 Haw. 344, 347; *Fraga* v. *Portuguese Mut. Ben. Soc.*, 10 Haw. 128; *Iaukea* v. *Cummings*, 9 Haw. 558.

The next exception urged is that the court erred in refusing to grant defendant's motion to strike plaintiffs' Exhibit "G," the evidence showing the exhibit to be a copy made from other documents (Exception 5).

One of the plaintiffs, Mr. Saiki, had testified that the extra work for which plaintiffs were seeking compensation had been performed under the orders of defendant. Saiki was then shown plaintiffs' Exhibit "G" and asked what it was. He answered that it was a copy of the original of his records signed by the architect Kerr. Witness said he gave it to Kerr to be signed. He was then asked, "Q Who made up the list of all these items, who furnished the data and made up this list? A These items were taken from a similar memorandum book and put on that sheet by Miki. Q By Miki, who is sitting here? A Yes. Mr. Cathcart: I move to strike Exhibit G on the ground first that it appears now in evidence that H. L. Kerr, the architect, was not employed by the defendant for any other purpose or any other thing except to approve the plans of this so-called 2d story, that is the plans D and E, and further that it appears that this is a copy of some original book of entry and not in any way an original entry."

The first ground upon which the motion to strike Exhibit "G" was based in the trial court is not here relied upon as error, the defendant relying only on the second ground of the motion to strike, namely, that Exhibit "G" is a copy of some original book of entry and not an original entry. As already stated, Exhibit "G" was received in evidence without objection on the part of defendant. It is apparent that the exhibit was not offered as an original entry but simply as a memorandum

which had been checked at the time by the witness Kerr and which Kerr had testified to as being a correct list of the changes that had been made. There can be no doubt but that it would have been competent for the witness Kerr to have orally testified to these changes, item by item, and he might have been asked to write down a list of the changes made, which written list would have been admissible in evidence. Under the circumstances, therefore, Kerr having testified that he knew that all of the changes set forth in Exhibit "G" had been made there was no error in receiving the exhibit in evidence and the motion to strike was properly denied.

The next error specified is that the court erred in permitting the witness Kerr to testify over objection in amplification of the items contained in plaintiffs' Exhibit "G" (Exception 16).

After Exhibit "G" had been admitted in evidence, the witness Kerr was asked as to each item separately. "Q This item, 'work on partition,' is charged at the rate of $160. Can you state whether at the time you wrote 'O. K. H. L. Kerr' on the bottom of that sheet, you were familiar with the work covered by that item? A Yes. Q Can you now state whether that charge, $160., when made and when presented to you in this bill, was then, in your opinion, a reasonable charge? Mr. Cathcart: I object to all this examination on the ground that it is incompetent, irrelevant and immaterial; first, that the contract specifies and requires all changes to be made in writing; that there is no evidence sufficient to show that there was any change made between the parties so as to dispense with the requirements of the contract. The second ground is, if the Court pleases, that it calls for the conclusion and opinion of the witness, and on the ground there is no evidence yet of when it was made; on the ground there is no evidence that the witness knows when

it was made." The objection was overruled, counsel noted an exception and asked that his exception should apply to all of this line of examination.

None of the foregoing objections are now urged here, the sole objection to the admission of the evidence of Kerr now urged being that the contents of Exhibit "G" should not have been read to the jury and that an examination of Kerr upon the separate items thereof constituted in effect a reading of the exhibit to the jury. There is no merit whatever to this contention. Furthermore, this exception cannot now avail for the reason that it was not made in the trial court. *Wong Hoon Kan* v. *Lui Yan,* 16 Haw. 734, 735; *Territory* v. *Johnson,* 16 Haw. 743.

The next specification of error is that the court erred in refusing to grant defendant's motion to strike certain portions of the testimony of the plaintiff Saiki, in particular, that portion of said witness' testimony regarding a custom to charge for using second-hand lumber (Exception 12).

The witness Saiki having testified to a long list of changes and extra work performed by plaintiffs for defendant in which list was included a charge for using second-hand lumber, counsel for defendant moved to strike all of the witness' testimony in reference to these changes and extra work "on the ground, if the Court pleases, that there is not sufficient evidence in respect to these items and each one of them, and I would like the Court in overruling me to overrule so it will appear I shall have an exception to the overruling on each item, on the ground that it does not appear by sufficient evidence to show there has been any alteration or change between the parties as to the contract, so as to admit evidence of extras when they were not established in writing, and when the price was not agreed upon in any way." The court denied the motion to strike and allowed the

exception of counsel to run to each of the list of items testified to. The record clearly shows that the only grounds upon which the foregoing objection was based were those enumerated above. No motion whatever appears to have been made to strike any of the evidence of Saiki on the ground that such evidence was in regard to a custom to charge for using second-hand lumber and such exception cannot now be considered here.

Exception 23 is to the giving by the trial court of the following instruction on behalf of plaintiffs:

"Gentlemen of the Jury, you are instructed that the evidence in this case has established the fact that a number of substantial alterations and additions were made in the Yee Wo Theatre building, after construction thereon had begun, which were not covered or contemplated by the original contract. You are further instructed that both the defendant (owner) and the plaintiffs (contractors), acquiesced in said changes being proceeded with, without insisting upon any authorization therefor in writing.

"You are accordingly instructed that the provisions in the original contract to the effect that no alterations should be made, unless authorized in writing by the owner, was waived by the parties hereto as to all matters as to which substantial oral agreements were made. And you are instructed that the plaintiffs are entitled to compensation in the reasonable value of the labor and material furnished by them in their work of carrying out such changes or making such additions (less, of course, all payments heretofore made by defendant), their said compensation being in addition to and entirely independent of the compensation provided for in the original contract."

The original contract between the parties contained the following clause: "No alterations shall be made in the work except upon written order of the Owner; the amount to be paid by the Owner or allowed by the Contractors for such alterations to be stated in said order."

Notwithstanding the foregoing provision as to written orders for alterations, the evidence clearly shows that such provision was never lived up to but that, from time to time, verbal orders for alterations and additions were given by defendant to plaintiffs. The evidence of the plaintiff Saiki is that all of the orders for extras and alterations were given to him by defendant orally and that it was agreed that such extras and alterations should be charged for at reasonable rates. A provision in a building contract that no alterations shall be made in the work except upon written order of the owner may be waived (*Stewart* v. *Spalding,* 23 Haw. 502) ; and it conclusively appearing from the evidence in this case that this provision had been waived by defendant, the trial court properly instructed the jury to that effect. The contention of defendant that, under the instruction as given, the jury was warranted in finding defendant liable, irrespective of notice by plaintiffs to defendant that a charge would be made for extras, or irrespective of the question of whether or not the character of the work was such that the defendant would from its nature be aware that it was attended with extra cost, is not tenable, for the trial court in this instruction did not instruct the jury that the provision in the original contract pertaining to alterations had been waived in every particular. The instruction was that such provision "was waived by the parties hereto as to all matters as to which substantial oral agreements were made." There was nothing in the instruction that could have misled the jury into the belief that the defendant was liable for any alterations or extra work that plaintiffs might have voluntarily and without the order of defendant put into the building.

Exception 25 is to the refusal of the trial court to give the jury the following instruction on behalf of defendant: "I instruct you, gentlemen of the jury, that if

you believe from the evidence that the plaintiffs know-ingly constructed any portion of said building in violation of the law or of an ordinance, they cannot recover from the defendant anything, either for the work done in such construction or for the work done in tearing the same down."

The trial judge endorsed on the proposed instruction: "Refused" (refusal) "of the above based on the ground that no charge is made for construction contrary to law." Counsel for defendant asserts that in this respect the trial court was in error, and that the evidence clearly shows that the plaintiff Saiki knew that certain of the work done was in contravention of the local building ordinances. The evidence of Saiki in this respect was to the effect that the fire chief and building inspector had required him to tear out certain lath and plaster work and change the construction to stone; that when he put in the lath and plaster work he knew that such construction was contrary to the building ordinance; that he so told the defendant and that defendant told plaintiff that he had obtained permission from the building authorities to put in the lath and plaster work.

As far as can be gathered from the portions of the transcript pointed to us by counsel for defendant, there is nothing to indicate that plaintiffs were seeking to re-cover for work done in violation of any ordinance, and the refusal of the trial judge to give the requested instruc-tion was therefore proper. In the itemized statement in the amended complaint setting forth the extra work for which plaintiffs claimed compensation, is a charge of $350 "To extra, removing lath, etc., from both walls." From the record it is not entirely clear whether this is the charge that counsel for defendant objected to on the ground that the plaintiffs were seeking to recover for work illegally done, but assuming such to be the case, under

rule 4 of the first circuit court, in order to avail himself of such a defense the alleged illegality should have been pleaded.

Exception 28 is to the refusal of the trial court to grant defendant's motion for a new trial on the ground of the alleged misconduct of the attorneys for plaintiffs during the trial.

The testimony of the plaintiff Saiki was to the effect that after he had constructed the foundations for the building, defendant ordered him to add eight inches to the thickness of the foundation walls. The defendant on cross-examination denied that he had given plaintiffs such an order or that such additional work had been done. Defendant also denied the truth of testimony of Saiki as to the depth of a trench dug by plaintiffs, defendant claiming that the trench was only one foot deep while plaintiff had testified that it was six feet deep. Defendant also denied that certain pier footings had been put in as testified to by plaintiff. At this stage of the cross-examination counsel for plaintiffs asked defendant, "Can we go down on this lot back of the building today, with your permission, and at each corner and at intervals across the back, may we dig down four or five feet, with your permission, to see how far the stone work goes down back of the building? Mr. Cathcart: Objected to as improper cross-examination. We are perfectly willing that should be done." Counsel for plaintiffs then withdrew the question, adding, "Well, we are going to ask to dig through the floor and we will put up a $50,000. bond, if you wish it," to which counsel for defendant replied, "You are not going to do that without our permission, and you should have asked permission earlier in the trial. The idea of doing it at this stage of the game." The subject was then dropped for a short time. A little

later the subject of digging was reverted to by counsel as follows:

"Mr. Lymer: To clarify the situation I want the record to show that the plaintiffs request permission of the defendant to dig down at places in the rear and on the side and in front of the building, and where necessary to dig holes through the sidewalk, to estimate the depth of the foundation of this building; secondly, permission to cut through the floor at designated places for the purpose of determining whether or not the six pier footings were built, and their dimensions under the floor, and also incidentally to cut through and show how much stone work is under this floor, whether this lot is filled land with a large amount of stone work under it, and this request, which I now make, will be conditioned upon our furnishing a bond, with a surety company as surety, in any amount that your Honor may think is fair, or that counsel will think is fair, say $20,000., to replace everything as it is in case the representations made as to the piers and foundations and filled-in character of the soil are not true.

"Mr. Cathcart: May I ask what is the purpose of such a statement made at this time in this court. May I ask what the court has to do with it.

"Mr. Lymer: I simply want to get it in the record, and in the case, that we wish to do this thing. Speaking to counsel at recess he said he would like to think it over, and then I understood he was going to fight it, and anyway the time is too short to wait. This man has just sworn to a lot of statements that can only be conclusively shown, whether true or not, by investigation, and the only thing I can do, and I think it is quite proper, to ask for this consent. It has been done many times before. It was done in the Spaulding case in New York.

"Mr. Cathcart: It was done in the Spaulding case early in the trial of the case, before the case ever came on for trial, before the jury. The request was made and it was allowed to a certain extent. This request involves a great deal of inconvenience, not so much to Lee Sing as to the persons who are occupying that building, and

the lessee of it, and to the storekeepers. In the Spaulding case they promptly and early asked permission to do it, and as I say it was granted, but only to a slight extent, as Judge Lymer knows, and he was for the defendant in that case, because of the fact of the inconvenience of tearing up a building to the tenants, and to the owner. In the first place there should have been—and if he wanted to make a request he should have made the request to me as attorney for the defendant. That is the way the attorneys for the L. Stewart Company did in the Spaulding case, and they also made a request of the owner, but they did not wait until the case was almost finished or the trial of it; they did not wait until the depositions were all taken. Now here we are approaching the very completion of the case and so it is for the plaintiff in this case to prove their case. They are suing on a quantum meruit and they must show what work they did there, and they must show the reasonable value of it. Now if they went six feet underground, or if they filled in under the floor with rock, they should have either requested permission from us at the time in order to show what they did. Of course they could put any quantity of rock underground there. I am neither saying whether I will accede to the request or not, but I will say to the court that before I consider the case I expect it to be put in writing to me, so we shall know where we stand, and this in open court is a mere play and not proper. He should have given me time to consider the matter and let me consider what inconvenience we shall be put to. I won't take very long to consider this matter.

"Mr. Lymer: The only opportunity I have had to broach this matter is when the present witness testifies on the stand, and the very moment he has testified as to this matter I made the request. I don't need to help him to decide what he is going to testify to from time to time.

"Mr. Cathcart: On October 5th he testified to the same effect, and I move to strike the statements made by counsel here, if they have been taken down and put in the record, and that the jury be instructed not to consider them.

"Mr. Lymer: The offer made is an important part of the record. If your Honor thinks I should make it in the form of a motion I can do that. I think I have the right to ask counsel if he will consent to a certain course.

"Mr. Cathcart: If counsel can show authority for doing what he is doing this morning, I will withdraw my motion to strike. Upon a proper motion and proper showing the court will act but that is always done outside of the trial of the case. There has been no instance where any proceeding has been had like we had here this morning. If counsel wanted to inspect the premises, he has been down there all the time, and we have made no objection. They have treated the premises as though they owned them. We do not object, but if he wanted to tear up that building and wanted to make a further inspection, then his proper procedure is to make a motion and state what he expects to prove. I don't think there is any authority that will bear him out in his present procedure.

"The Court: It strikes me in reason that in a case of this kind there should be a motion presented to the Court, and I think the motion should be based on evidence or something.

"Mr. Cathcart: It strikes me it is very prejudicial to the defendant.

"Mr. Lymer: I have no objection to its being stricken from the record in view of my contemplated motion.

"Mr. Cathcart: It is so highly prejudicial that I don't know just what procedure to take. I want to take exception to counsel's statements made in court. It is all before the jury, they have been sitting listening to our talking.

"The Court: The motion to strike will be granted, and, gentlemen of the jury, it is not evidence, and it is not in the nature of evidence, under your oath and law and your procedure in the Court. Your verdict must be based on evidence you hear in court and nothing else. Any statement made by counsel, any motion that may come from others than through the channels of regular evidence, will be disregarded by you. It is no part of the case. I do not reprimand counsel particularly be-

cause this is an unusual matter, and we all have to investigate, but as I think of it it seems to me the wrong procedure has been followed. It seems to me it should be made upon motion based upon proper affidavits to afford the court some basis on which to proceed. We will proceed, gentlemen of the jury, as if this had never occurred. You will entirely disregard what counsel may or may not do outside in the matter, we are not concerned. Remember, gentlemen of the jury, when the court grants a motion to strike evidence from the record and directs you not to consider it, that means what the language imports. When you retire to your jury room any evidence that has been stricken out should not be mentioned by anyone or in your consultation of the case, just as though it had not occurred. Just like tearing a leaf out of a book, you are unable to read that leaf because it is torn out. You are unable to consider evidence stricken out because it is no part of the case."

All of the foregoing was in the presence of the jury and it is contended by counsel for defendant that the conduct of plaintiffs' counsel in making such a request was so designedly prejudicial to defendant that the verdict of the jury should be set aside and a new trial granted. It is asserted that plaintiffs' counsel knew from the record that the theatre premises had been leased to third parties and that neither defendant nor the court had authority to grant the request. According to defendant's counsel the request made at such time and in such manner was such as to place defendant in an embarrassing situation, for an objection by defendant to this request would be construed by the jury to be interposed because of fear on his part that if the request to dig were granted it might become apparent that the defendant's testimony had been false.

We cannot from the record say, as suggested by counsel for defendant, that counsel for plaintiffs by making the request to make such diggings "was cunningly shaping

a course to prejudice the jury," or that the verdict of the jury shows that he succeeded in doing so. Any attempt on the part of an attorney to prejudice a jury is to be deprecated and where from all the facts and circumstances it appears that the verdict of a jury is not based upon the evidence adduced but has been influenced by the improper conduct of counsel, such verdict should be set aside. In the present case, however, we are unable to say that the request made by counsel for plaintiffs prejudiced defendant or influenced the verdict of the jury in any way. The trial court most carefully instructed the jury as to its duty in regard to the situation and it cannot be assumed that the jury, in disregard of its duty and the admonition of the court, was wrongfully influenced in rendering the verdict it did. When the trial court instructed the jury that something they had heard was not to be considered by them, we must presume in favor of their oath and public duty. *Ter.* v. *Goto et al.,* 27 Haw. 65, 97.

We have examined all of the exceptions and finding no error in the record the exceptions are overruled.

*Watson & Lymer* and *Marguerite K. Ashford* for plaintiffs.

*Thompson, Cathcart & Ulrich* for defendant.