No. 13,260.

GATES *v.* HEPP.
(35 P. [2d] 857)

Decided July 9, 1934.

Messrs. SWERER & JOHNSON, for plaintiff in error.

Mr. ERNEST MORRIS, Mr. C. E. WAMPLER, for defendant in error.

*In Department.*

MR. JUSTICE BOUCK delivered the opinion of the court.

GATES, plaintiff in the district court and plaintiff in error here, sued the defendant in error Hepp and two others to recover on certain promissory notes executed and delivered under a certain written contract. Hepp is the only defendant brought into court. His general demurrer to the third amended complaint was sustained. The plaintiff stood upon that complaint, and a judgment of dismissal was entered. Gates prosecutes error.

Hepp's demurrer raises the fundamental question whether the third amended complaint states a cause of action. Gates, by standing upon that complaint, stakes all upon its sufficiency. We must, of course, assume the truth of all facts well pleaded therein, and consider whether upon the record before us they entitle him to relief. In sustaining the demurrer the trial court gave as its reason the alleged fact that the contract in question is a unilateral contract and lacks mutuality. This court is not limited to that reason. If the judgment of dismissal by the lower court was right, the assigning of a wrong reason would be immaterial.

In our effort to arrive at a correct conclusion we shall consider the following two questions: Does the pleading state facts sufficient to constitute a cause of action? Is Gates the one who would be entitled to judgment if one could be given against Hepp? A negative answer to either of these questions would require affirmance of the judgment entered below.

Before discussing the questions, we shall examine the contract here involved so far as necessary to an understanding of the exact controversy. This contract was entered into on November 22, 1926, between Gates, on the one side, and the so-called "purchasers"—consisting of the three defendants together with one Bogdon, who has since died—on the other. An analysis of the contract discloses that it consists of two distinct parts. The first part provides for sale and delivery to the "purchasers" of certain corporate stock personally owned by Gates, and for the making and delivery of a promissory note in payment therefor. This part of the contract was fully performed before the institution of the suit, the note having been paid and Gates having ceased to be a stockholder. The second part of the contract is as follows:

"* * * Whereas * * * Gates has heretofore been acting as fiscal agent for The Franklin Loan and Finance Company * * * and has sold stock therein to certain persons hereinafter named * * * and it is the desire of the parties that all of the interest of said Gates in or concerning said Company be acquired by the Purchasers and that the [first mentioned] stock * * * [so] sold * * * be acquired by the Purchasers.

"Now, therefore * * * it is agreed: * * *

"2. The Purchasers hereby agree that they will purchase the stock * * * hereinbelow listed upon the terms and conditions hereinbelow set forth [then follow names, the respective number of shares, and the purchase price of each particular block] * * *

"The purchasers herewith * * * deliver to * * * Gates, hereinafter called the 'Trustee,' their promissory

288

notes, payable to said Trustee, in the total aggregate sum of the purchase price of the stock \* \* \* ($5,350.00) \* \* \* The proceeds of these notes are to be used by the Trustee as set forth. Said trustee is directed to take up the stock \* \* \* in the order listed \* \* \*. In event that any of the stockholders in the order of their being listed refuse to surrender and sell their stock, then the next in order shall be given the preference; and upon the delivery of the certificates of stock properly endorsed and said note hereinabove listed to the purchasers, said trustee will receive payment in cash. \* \* \* In case any of said stockholders fail or neglect to accept the benefits hereof the Purchasers shall be relieved of all obligation to purchase any stock of said persons so failing or neglecting. And such amount shall thereupon be applied to the payment of the last of said notes to become due, to-wit: the note of $1,850.00, due November 22, 1930, and such transaction to be evidence by an endorsement on the note or notes last to come due. \* \* \*

"3. As and when said notes are paid by the Purchasers, the Trustee shall cause to deliver the said stock paid for by him as aforesaid to the Purchasers. \* \* \*

"4. \* \* \* It is further agreed in the event that said Purchasers shall fail to pay any one of the above described notes, on the due date thereof, or shall fail to perform any of the covenants hereof then the whole amount remaining unpaid shall at once become due and payable, and the said Trustee and his said agent or either of them are hereby authorized and empowered to collect and enforce the same as provided by law. \* \* \*"

We now take up the consideration of the two questions heretofore stated in inverse order.

1. Is Gates the one who would be entitled to judgment if one could be given against Hepp? Gates's personal interest ended when the sale of his own stock was consummated. After that there is nothing we can see either of advantage or of disadvantage to Gates in anything else that might be done under the contract. At

most, his role of "trustee" was thenceforth that of agent for Hepp and his associates. He certainly was not acting as agent for the old stockholders. It in no way appears that Gates could be personally concerned whether the "purchasers" were or were not substituted for the old stockholders or for some of them. In other words, the complaint's assertion of rights adverse to Hepp is the assertion of rights vested, if at all, in the stockholders whose stock the "purchasers" had hoped to get. That this was the view of the stockholders and of Gates himself is obvious from the proceedings taken in the lower court. The only persons who could be deemed beneficiaries at the time this suit was instituted are the very stockholders who sought, and obtained, leave to intervene. Thereafter Gates, up to that time the only named party plaintiff, was to all intents and purposes supplanted by those in whose supposed interest he had made the contract. The trial court, evidently regarding them as the real parties in interest, permitted them to intervene and become parties in their own right. Since the real parties in interest were thus the interveners, they (and not Gates) were the ones entitled to an affirmative judgment if any could be rendered. Under the conditions disclosed by the intervention proceedings, a cause of action, if it existed at all, existed in favor of the interveners. No cause of action is stated in favor of Gates, inasmuch as the record itself (of which the lower court necessarily took judicial notice, as this court will also do) shows the lack of personal interest on his part. It was with Gates's acquiescence, if not his active encouragement thereof, that the intervention proceedings resulted in the general appearance, before the court, of the interveners as the real parties in interest. These thereupon required no nominal plaintiff to act in their behalf and unquestionably possessed and could assert and did assert whatever primary right existed as the basis for a remedy. While one who has made a contract for the benefit of another can under our Code prosecute an action

in his own name, there is nothing to prevent the real party in interest from becoming the actual litigant. The so-called American principle by which this is allowable has been adopted in our various Codes of Civil Procedure. Compare Code, 1921, §§3, 5 (Courtright's M. A. C., §§3, 5). "The right of either party to sue—the one as the person to whom the promise was made, and the other as the real party in interest—can not be denied unless there is an express trust, and there is something in its nature, or in the relation of the trustee or beneficiary, that would forbid an intermeddling by the latter." Bliss on Code Pleading (3d Ed.), page 93, §58. And, when as a matter of fact the beneficiary becomes an actual party to the action, the latter in respect to the primary right supersedes the former, whereupon the judgment entered must be in favor of the beneficiary if he succeeds, or against the beneficiary if he fails. This is elementary. Even under the most liberal interpretation of our Code, whatever rights are involved in the present case under the record as it now stands are rights of the interveners; and, since the interveners are not before us and are not complaining of any error, it is manifest that the dismissal of the case as to both Gates and the interveners must stand: as against Gates, because he has no personal interest and consequently has suffered no loss or prejudice, while as against the interveners the dismissal is final because they neither objected nor excepted thereto, they assign no error, and the judgment against them is not here for review. It was optional to try to intervene. Having succeeded, the interveners became parties to the action, with presumably the same rights and liabilities as the original parties. 47 C. J. 115, §220. Being parties, they then must of course follow the proceedings throughout, and, if not satisfied, must present the judgment complained of for review. This they did not do. They are not parties here. Our answer to the first question, therefore, is in the negative, that is, that if anyone were entitled to judgment it is not Gates.

2. Does the pleading state facts sufficient to constitute a cause of action? From the contract itself it is plain that, at the time the contract was made by Gates, the interveners did not assume any obligations, or make any promises. In other words, as to the interveners the contract lacked mutuality. The very terms of the contract show that Gates did not therein represent the interveners and was in no way authorized as their agent. He was a mere volunteer. Under the allegations of the third amended complaint, read in the light of the record before us, this complaint is therefore insufficient. If our second question were not rendered immaterial by our answer to the first, it too would have to be answered in the negative. It follows that the judgment was right, and must be affirmed. The previous opinion, which also read for affirmance, is withdrawn and the present opinion is substituted.

Judgment affirmed.

Mr. Chief Justice Adams and Mr. Justice Butler concur.