415 F.2d 882
 Ross E. COX, General Contractor, and Fidelity and Deposit
Co. of Maryland, a Maryland corporation, Appellants,
v.
The FREMONT COUNTY PUBLIC BUILDING AUTHORITY, a Colorado
corporation, the County of Fremont By and Through the Board
of County Commissioners of Fremont County, and the First
National Bank of Florence, Trustee, Appellees.
 No. 9753.
 United States Court of Appeals Tenth Circuit.
 Sept. 3, 1969.
 
 Thomas W. Whittington and John H. Tippit, Denver, Colo., and John A. F. Wendt, of Clark & Wendt, Aspen, Colo., for appellants.
 John J. Hanlon and Charles F. Brega, of Hindry, Erickson & Meyer, Denver, Colo., for appellees.
 Before JONES,* Senior Circuit Judge, and BREITENSTEIN and HOLLOWAY, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 This appeal seeks reversal of a judgment on a jury verdict for damages against a building contractor and his surety. The damages were awarded in a diversity suit for breach of a contract for construction of a courthouse in Fremont County, Colorado, and for sums expended to mitigate damages to the building. Leaking and breakage of glass in a skylight in the courthouse roof is the center of the controversy involved on this appeal.
 
 
 2
 Appellant Cox is the contractor found liable and appellant Fidelity and Deposit Co. of Maryland (Fidelity hereafter), the surety on his performance bond, was also held liable. Appellee Fremont County Public Building Authority (the Authority hereafter) made the contract with Cox for the work. Appellee County of Fremont (the County hereafter) created the Authority as the agency to have the building constructed. Appellee The First National Bank of Florence, Colorado (the Trustee hereafter) is an obligee on the performance bond due to its position as trustee under an indenture of mortgage securing the holders of the bonds issued to finance the construction.
 
 
 3
 In general the undisputed facts are as follows. In May, 1958, the County decided to build a new courthouse. The plan was to create the Authority and to lease to it the land on which the building was to be erected. The Authority would contract for the work and the completed courthouse and the land would be leased back to the County. This procedure was chosen because of restrictions in the Colorado Constitution on bonded indebtedness.
 
 
 4
 The Authority was incorporated in 1959 and in July of that year it executed the Construction Agreement with Cox. Other contract documents which are incorporated by reference are A.I.A. Form A2, described as the General Conditions; the Supplementary General Conditions; and the Specifications and Drawings. Fidelity's liability was grounded on its performance bond.
 
 
 5
 Construction began in August, 1959. After some delay in completion of the work the County occupied the new courthouse in September, 1961. During the latter part of September the skylight in the center of the building was leaking, as had been noticed earlier. Complaints were made to Cox in September, 1961, about the skylight and other problems. The Authority and the County also made complaints to Cox about the leaking and glass breakage in 1962. In August, 1962, Cox agreed to do remedial work on a number of problems at the courthouse including the skylight. Cox also agreed to furnish a five-year guarantee against leakage of the skylight. The architect testified that a guarantee was furnished but was not honored because the subcontractor furnishing it was not paid by Cox.
 
 
 6
 The record is somewhat unclear about the 1962 remedial work.[1] In any event the record does not show work by Cox himself after 1962. It shows no reply by Cox to complaints to him by the architect in January, 1963, about leaks and other defects in the skylight, and by the Authority on March 7, 1963, about uncompleted work. The architect testified that leaking occurred after testing of the remedial work. This suit was brought in August, 1963. The verdict awarded $30,000 on the skylight claim and $1,500 on other claims. Cox and Fidelity appeal the judgment on the verdict.
 
 
 7
 Appellants' principal contention is that the contract documents made arbitration a condition precedent to suit and that appellees' failure to arbitrate precludes this recovery by them. The trial court held that the arbitration provisions do not apply in these circumstances.[2] We conclude also that the arbitration provisions do not bar recovery for reasons that follow.
 
 
 8
 The contract documents provide for arbitration in the General Conditions. Appellants point to Articles 20 and 40 in particular, which are set out in the margin.[3] There the parties agreed that 'disputes, claims or questions' subject to arbitration under the contract would be submitted to arbitrators whose decision would be a condition precedent to legal action. Such common-law arbitration agreements have long been favored in Colorado and legal actions may not be brought to settle disputes where arbitration has been agreed upon. Ezell v. Rocky Mountain Bean & Elevator Co., 76 Colo. 409, 232 P. 680 (1925); McClelland v. Hammond, 12 Colo.App. 82, 54 P. 538 (1898).
 
 
 9
 We conclude, however, that the circumstances involved here did not oblige appellees to invoke arbitration. For a dispute, claim or question to be present within the meaning of the contract, a difference between the parties was required. 'If no difference should arise, there would be no question to submit.' Fravert v. Fesler, 11 Colo.App. 387, 53 P. 288, 290 (1898). There is no dispute requiring arbitration until a matter of fact or law is asserted by one side and denied by the other. Gold Uranium Mining Co. v. Chain O'Mines Operators, 128 Colo. 399, 262 P.2d 927 (1953).
 
 
 10
 The record does not reveal the occurrence of such a dispute. The Authority and the County complained to Cox on numerous occasions about the skylight. Commencing with discussions in September, 1961, assurances were repeatedly given by Cox to the Authority that the skylight problem would be remedied. On August 17, 1962, Cox did question whether the difficulty arose from workmanship and material for which he admitted responsibility, or from a defect in design, for which he was not responsible.[4] However, he met shortly with the architects as requested and on August 30, 1962, he agreed to do remedial work on 18 problems relating to the courthouse, including the skylight, and to furnish a five-year guarantee against leakage of the skylight. Subsequent complaints about the condition of the skylight after the 1962 work on it brought no contradictory assertions by Cox.[5]
 
 
 11
 Thus, there was no denial by Cox of an assertion of fact or law by appellees and no dispute occurred requiring arbitration prior to suit. Gold Uranium Mining Co. v. Chain O'Mines Operators, supra; Fravert v. Fesler,supra. Appellees were made aware of no dispute so that they might know to invoke arbitration. Therefore, none of the errors claimed in connection with the arbitration issue has merit.
 
 
 12
 Appellants' second contention is that the trial court erred in not instructing properly on substantial completion of the building or substantial compliance with the contract by appellants. Reliance is placed on Newcomb v. Schaeffler, 131 Colo. 56, 279 P.2d 409 (1955), and similar cases.
 
 
 13
 The theory based on substantial compliance is untenable. Where there is substantial compliance with the construction contract and the defects remaining amount to only trifling particulars, the builder is entitled to recover the contract price,[6] but the owner is entitled to damages for material and labor to put the building in proper condition. See Newcomb v. Schaeffler, supra. Thus, substantial compliance by Cox with the contract would not bar recovery of damages by the Authority for remaining defects due to faulty workmanship or materials. See Campbell v. Koin, 154 Colo. 425, 391 P.2d 365 (1964); and Louthan v. Carson, 63 Colo. 473, 168 P. 656 (1917). No issue is raised as to the sufficiency of the evidence to support such damages awarded here. The substantial compliance principle affords no ground for reversal.
 
 
 14
 The related claim of error on the issue of substantial completion and acceptance of the building is without substance. Appellants rely on Bush v. Finucane, 8 Colo. 192, 6 P. 514 (1885). However, the case recognizes that where the party accepting the building objects to the character of the work, as the Authority did, he cannot be held to have waived his right to damages. Nor are acceptance of a building and payment for it after its supposed completion sufficient alone to waive the owner's claim for damages for defective construction, although these circumstances may be considered where waiver is claimed. Leonard v. Home Builders, 174 Cal. 65, 161 P. 1151, L.R.A.1917C, 322 (1916). In fact, the parties here agreed that occupancy and payment were not an acceptance of defective work or materials.[7] The trial court's instructions fairly submitted the issue of whether the acts of appellees showed an intent to release Cox from further obligations. No error occurred in the trial of these issues.
 
 
 15
 Appellants next argue that the trial court improperly refused to charge on the defense that the skylight problem resulted from defective design. In refusing to instruct on the issue the court noted that the defense evidence did not condemn the design and that assertion of the theory was outside the pleadings and was untimely.
 
 
 16
 Appellants say that since proof on the defective design theory was admitted without objection, any contention that the issue was not pleaded was waived. Objection was made when the principal testimony on the theory was offered. The trial court stated that the proof was admitted because of its relevance to the separate issue of whether a lack of maintenance caused the skylight problem. We conclude that the defective design issue was not tried by consent. It was not raised in the answers filed or in the pretrial order fixing the issues. Refusal of the instruction was not error. Miller v. Brazel, 300 F.2d 283 (10th Cir. 1962). Complaint is also made of denial of a motion to amend during the trial to include the defense of a defective design. The circumstances show no abuse of the trial court's discretion by denying the motion. Heilig v. Studebaker Corporation, 347 F.2d 686 (10th Cir. 1965).
 
 
 17
 Appellants contend that the admission in evidence of a glass panel and metal bar was error since they had not been endorsed as exhibits at pretrial. The exhibits were used in connection with testimony that the glass panels were installed upside down, a new theory as to the cause of the skylight troubles. However, the panel and bar were shown in a photograph already in evidence. The court observed that the realism gained outweighed any prejudice and that the defense would be permitted to bring in additional expert proof if needed. Substantial rebuttal evidence on the panels and their positioning was obtained from additional witnesses and admitted. Under the circumstances we cannot say that there was an abuse of the trial court's discretion in admitting the exhibits and denying a mistrial sought on the basis of their admission. Coffey v. United States, 333 F.2d 945 (10th Cir. 1964).
 
 
 18
 It is argued that the trial court improperly refused to instruct on a theory of waiver of the Construction Agreement provisions based on the architects' oral approval of changes in the plans, particularly as to the position of the glass panels. Reference is made to the requested instructions which are said to encompass the theory. These dealt with the general theory of waiver by approval and acceptance of the construction work by the architects in several aspects, and other matters. Some included various references to the plans and specifications 'as modified by the architects.' However, none of the requested instructions presented clearly to the trial court the theory now asserted on oral modification of the plans by the architects.
 
 
 19
 The trial court gave general instructions on acceptance of the building and waiver, as previously noted. Moreover, the charge explained the status of the architects as the agent of neither party but recognized that during construction they could in fact and by custom be an agent and authorized to approve changes, for which the County would be liable. Appellants' position as to such particular instruction desired was not then distinctly stated after the charge, nor was any departure from the requested instructions asserted clearly so as to afford an opportunity for correction by the trial court. See Dunn v. St. Louis-San Francisco Ry. Co., 370 F.2d 681 (10th Cir. 1966). We cannot sustain the objection to the charge.
 
 
 20
 Appellants contend that there was an accord and satisfaction by the agreement for the remedial work by Cox and that it was error not to instruct on the issue. We are referred to the August 30, 1962, letter from Cox and the architects which was approved by the Authority and to acceptance of the remedial work which appellants say occurred on March 18, 1963. Neither the letter nor any evidence concerning the actions taken show an accord and satisfaction. The letter provided only that on completion and acceptance of the remedial work, the Authority agreed to release monies due under the contract. The agreement to do remedial work and to furnish the guarantee on the skylight was not offered as full satisfaction of the contractor's responsibilities or conditioned on release by the Authority of any rights against the contractor and the essentials of an accord and satisfaction are lacking. Hudson v. American Founders Life Insurance Co. of Denver, 151 Colo. 54, 377 P.2d 391 (1962); J. F. White Engineering Corporation v. United States, 311 F.2d 410 (10th Cir. 1962).
 
 
 21
 It is argued that since $4,480.94 was withheld from the contract price due to unfinished work, Fidelity is relieved of liability by conditions of the performance bond requiring payments in accordance with the contract. The Supplementary Conditions provided for such withholding of three times the estimated cost of remaining work. The verdict has determined that there was a liability in a substantially larger amount. The final payment was not due until delivery by the contractor of receipts and other instruments, which was not done because some subcontractors were not paid. Since the payment was not due under the contract, there was no violation of the conditions of the bond so as to relieve Fidelity.
 
 
 22
 Finally appellants argue that the Board of County Commissioners was an improper party because it lacked privity of contract with Cox and Fidelity. We have considered the contract documents and the surrounding circumstances and sustain appellees' contention that the County was a proper party and entitled to recover under third party beneficiary principles.
 
 
 23
 Colorado follows the rule that one may enforce a contractual obligation made for his benefit although he was not a party to the agreement. See Sanders v. Black, 136 Colo. 417, 318 P.2d 1100 (1957); Gates v. Hepp, 95 Colo. 285, 35 P.2d 857 (1934); Commissioner of Internal Revenue v. Weiser, 113 F.2d 486 (10th Cir. 1940). The promise to be enforced must be apparent from express provisions of the contract or some equivalent terms showing such an obligation. Corn Construction Co. v. Aetna Casualty and Surety Co. of Hartford, 295 F.2d 685 (10th Cir. 1961). When such an obligation is apparent from the agreement and the surrounding circumstances, the third party may enforce the obligation.
 
 
 24
 The obligation for the benefit of the County is inherent in the contract documents and the surrounding circumstances. Under the Leasehold Agreement, the Authority's obligation to the County to construct the courthouse building was recognized, and the plans and specifications for the building were subject to the approval of the County. Under the Construction Agreement, the County had the right to approve the form of the performance bond. The contractor was not entitled to final payment until completion of the building and final acceptance of work by the Authority, the County and the architects. The land belonged to the County and was leased to the Authority to have the courthouse built and to lease the land and building back to the County. Thus, the agreements and the circumstances show that the benefit of faithful performance of the Construction Agreement and the bond were intended to flow to the County. Such contractual benefit to the property owner is enforceable by him. See Sanders v. Black, supra; and Acme Brick Co. v. Hamilton, 218 Ark. 742, 238 S.W.2d 658 (1951).
 
 
 25
 We conclude that none of the propositions discussed nor any of the remaining contentions, which are related and require no further discussion, justify disturbing the judgment.
 
 
 26
 Affirmed.
 
 
 
 *
 Of the Fifth Circuit, sitting by designation
 
 
 [1]
 A letter of December 18, 1962, from the architect recommended acceptance of the remedial work under the terms of the August, 1962, Agreement with Cox. This included the five-year guarantee, discussed above. A statement of 'Acceptance Of The Remedial Work' on the letter was signed by the Authority President dated March 18, 1963, but the attorney for the Authority said the customary resolution therefor was not presented. The minutes of the Authority meeting, of March 18, 1963, refer to the architect reporting certain repairs made, including skylight work, and tests with no leaks; recommendation of the attorney to pay Cox on presentation of lien waivers, subject to litigation matters; and acceptance of the architect's recommendations
 
 
 [2]
 The trial court stated in substance that the arbitration provisions dealt with current problems, not those arising when the contract was purportedly completed and a breach was claimed. It was further observed that Cox undertook to do remedial work but the leaking continued. The court stated that such an unusual situation did not lend itself to arbitration
 
 
 [3]
 Article 20 of the General Conditions provided as follows:
 'Art. 20. Correction of Work After Final Payment-- Neither the final certificate nor payment nor any provision in the Contract Documents shall relieve the Contractor of responsibility for faulty materials or workmanship and, unless otherwise specified, he shall remedy any defects due thereto-- and pay for any damage to other work resulting therefrom, which shall appear within a period of one year from the date of substantial completion. The Owner shall give notice of observed defects with reasonable promptness. All questions arising under this article shall be decided by the Architect, subject to arbitration.'
 'Art. 40. Arbitration.-- All disputes, claims or questions subject to arbitration under this contract shall be submitted to arbitration in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of The American Institute of Architects, and this agreement shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other.
 'The Contractor shall not cause a delay of the work during any arbitration proceedings, except by agreement with the owner.
 'Notice of the demand for arbitration of a dispute shall be filed in writing with the Architect and the other party to the contract. If the arbitration is an appeal from the Architect's decision the demand therefor shall be made within ten days of its receipt; in any other case the demand for arbitration shall be made within a reasonable time after the dispute has arisen; in no case, however, shall the demand be made later than the time of final payment, except as otherwise expressly stipulated in the contract.
 'The arbitrators, if they deem that the case requires it, are authorized to award to the party whose contention is sustained, such sums as they or a majority of them shall deem proper to compensate him for the time and expense incident to the proceeding and, if the arbitration was demanded without reasonable cause, they may also award damages for delay. The arbitrators shall fix their own compensation, unless otherwise provided by agreement, and shall assess the costs and charges of the proceedings upon either or both parties.'
 
 
 [4]
 At that meeting Cox said that if they were trying to 'pin something' on him, he did not think it would work and that he did not see anything serious about the situation
 
 
 [5]
 Appellants argue that the architect's recommendation in December, 1962, to accept this remedial work on the skylight by Cox and a five-year guarantee on it constituted an 'architect's decision' under Article 39 and that an appeal from it required arbitration under Article 40. The facts show no presentation of evidence to the architects on a disputed claim as Articles 39 and 40 contemplate, nor any 'decision' by the architects within their meaning. The architects were not deciding any claim or dispute, but instead were considering remedial work undertaken by Cox by agreement with appellants and the architects
 
 
 [6]
 In fact Cox is awarded here the remainder of the contract price. He is credited in the judgment with the recovery by counterclaim for the balance due him
 
 
 [7]
 The Construction Agreement provides in Art. VIII, Sec. 3:
 'No certificate issued nor payment made to the contractor nor partial or entire use or occupancy of the work by the Owner shall be an acceptance of any work or materials not in accordance with this Agreement.' The same provision appears in Art. 25 of the General Conditions.
 This contractual provision and Article 20 dispose of related contentions that the trial court erred in not giving requested instructions on the effect of certificates by the architects. The certificates were not conclusive against appellees and they were in evidence for consideration by the jury under proper instructions as to whether appellees had released Cox from further obligations.