691 F.2d 449
 Darel K. HARDIN, Plaintiff-Appellant/Cross-Appellee,
v.
MANITOWOC-FORSYTHE CORPORATION, Defendant-Appellee/Cross-Appellant,
and
Columbus McKinnon Corporation, Defendant-Appellee.
 Nos. 80-1522, 80-1562.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 5, 1982.
Rehearing Denied Nov. 3, 1982.
 
 Dan L. Wulz, Topeka, Kan. (with Gene E. Schroer, Topeka, Kan., on brief) of Jones, Schroer, Rice, Bryan & Lykins, Topeka, Kan., for plaintiff-appellant/cross-appellee.
 William Hergenreter of Shaw, Hergenreter, Quarnstrom & Wright, Topeka, Kan., for defendant-appellee/cross-appellant.
 J. Franklin Hummer, Topeka, Kan. (with Charles L. Davis, Jr., Topeka, Kan., on brief) of Davis, Unrein, Hummer & McCallister of Topeka, Kan., for defendant-appellee.
 Before BARRETT and McKAY, Circuit Judges, and BRIMMER, District Judge.*
 McKAY, Circuit Judge.
 
 
 1
 Plaintiff, Darel Hardin, appeals from a judgment entered by the United States District Court for the District of Kansas in a diversity case. Plaintiff brought this products liability suit, naming Manitowoc-Forsythe Corp. and Columbus-McKinnon Corp. as defendants, to recover for injuries he sustained in an on-the-job accident allegedly caused by a defectively designed push-pull jack. Plaintiff's employer, Combustion Engineering, was of course immune from suit under the Kansas workmen's compensation law.
 
 
 2
 Combustion Engineering leased a Manitowoc crane from a wholly-owned subsidiary corporation, Lummus Company. Defendant Manitowoc-Forsythe ordered the crane from its parent corporation, Manitowoc Company, Inc., and allegedly sold it to Lummus. The crane was manufactured by Manitowoc Engineering, a division of Manitowoc Company, Inc. Attached to the crane was a push-pull jack manufactured by defendant Columbus-McKinnon. Of these potential defendants, plaintiff chose to sue only Manitowoc-Forsythe and Columbus-McKinnon.
 
 
 3
 In the pretrial order, one of defendants' contentions was that the fault of other parties contributed to the accident and should be compared with the fault of defendants in assessing liability. Record, vol. 1, at 36.[1] Specifically, defendants alleged that plaintiff, his employer, and his union were all at fault. Id. at 31, 33-35. After entry of the pretrial order but prior to trial, ManitowocForsythe filed a motion to compare the fault of all parties whom the evidence would show to be causally responsible for the accident. Id. at 40. Plaintiff opposed the motion only on substantive grounds, arguing that Kansas law did not permit a comparison of fault in strict liability cases. Id. at 42-43. The district court granted the motion. Id. at 48-49.
 
 
 4
 Just before the trial began, eight months later, the court entered an order clarifying the circumstances under which it would permit a comparison of fault. The court said:
 
 
 5
 Before we will allow comparison of any party's causal contribution, ... there must be an established theory of legal liability which would allow recovery against that party had it been sued or were it not immune from suit ....
 
 
 6
 Once there is a valid theory of liability against a given party, there must be evidence sufficient to warrant the inclusion of that party in the calculations. As to any "phantom party" whose involvement is suggested, the court will evaluate the evidence by a directed verdict standard, and will in effect make a directed verdict on behalf of any claimed "phantom party." If the evidence would be insufficient to hold them in the case if they were actually sued, then the jury will not be allowed to consider their contribution to the injuries.
 
 
 7
 Record, vol. 1, at 60. At the conclusion of the trial, the court submitted a special verdict form to the jury and instructed them to allocate a percentage of fault among defendants (Manitowoc-Forsythe and Columbus-McKinnon), three phantom parties (Combustion Engineering, Manitowoc Engineering and Lummus Company), and plaintiff. The result was as follows:
 
 
 8
 Columbus-McKinnon 13.5%
Manitowoc-Forsythe 0
Plaintiff 20.0
Combustion Engineering 45.0
Manitowoc Engineering 9.0
Lummus Company 12.5
 ------
 100.0%
 
 
 9
 Id. at 109. The jury assessed damages of $150,000 and the court awarded plaintiff judgment against Columbus-McKinnon for 13.5% of $150,000, or $20,250. Judgment was not entered against Manitowoc-Forsythe because no fault was assessed to it.
 
 
 10
 When at the close of trial the court issued its proposed jury instructions, plaintiff objected to Instruction 18 which referred to comparing the fault of Manitowoc Engineering and Lummus Company. See Record, vol. 7, at 1595-96. Plaintiff objected to comparing the fault of any party not specifically put into issue by the pretrial order. The court overruled the objection on the ground that the issue of the fault of Manitowoc Engineering and Lummus had been tried by consent and would thus be treated as if it had been raised by the pleadings under Fed.R.Civ.P. 15(b). Id. at 1376.[2]
 
 
 11
 This appeal concerns the substantive and procedural propriety of comparing the fault of phantom parties under the Kansas Comparative Negligence Act, Kan.Stat.Ann. § 60-258a (1976). In ruling on the substantive issues, we must of course follow Kansas law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The procedural issues in this case are, however, governed by the Federal Rules of Civil Procedure. Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).
 
 
 12
 I. Substantive Propriety of Comparing Fault of Phantoms
 
 
 13
 Plaintiff claims that it is improper under Kansas law to compare the fault of nonparties (phantoms) with that of defendants in a products liability case. The Kansas Comparative Negligence Act,[3] Kan.Stat.Ann. § 60-258a, was the basis for the apportionment of fault in this case, and although the Act speaks only of negligence, the Kansas courts have held that the "doctrine of comparative fault" applies to claims based on strict liability and breach of implied warranty. Kennedy v. City of Sawyer, 228 Kan. 439, 452, 618 P.2d 788, 798 (1980). "Under the doctrine of comparative fault all parties to an occurrence must have their fault determined in one action, even though some parties cannot be formally joined or held legally responsible." Albertson v. Volkswagenwerk Aktiengesellschaft, 230 Kan. 368, 374, 634 P.2d 1127, 1132 (1981). The legislative intent behind § 258a is to ensure that all claims arising out of a tortious act are fully litigated in a single action. Eurich v. Alkire, 224 Kan. 236, 238, 579 P.2d 1207, 1208 (1978). The joinder provision of § 258a(c) allows a defendant to force a comparison of fault with third parties, but formal joinder is not a necessary prerequisite to comparing the fault of another. Kennedy v. City of Sawyer, 228 Kan. 439, 460, 618 P.2d 788, 803 (1980); Brown v. Keill, 224 Kan. 195, 206-07, 580 P.2d 867, 875-76 (1978). Thus, the Kansas courts have allowed comparison of the fault of phantom parties in products liability cases, Forsythe v. Coats Co., Inc., 230 Kan. 553, 639 P.2d 43 (1982); Lester v. Magic Chef, Inc., 230 Kan. 643, 641 P.2d 353 (1982), as well as in negligence cases. Brown v. Keill, 224 Kan. 195, 580 P.2d 867 (1978). We therefore reject plaintiff's contention that the fault of phantom parties cannot be compared under Kansas law.
 
 
 14
 Plaintiff argues that it was error to compare his own fault with that of defendants because he was guilty at most of ordinary negligence whereas defendants' liability is strict. The Kansas courts have recognized that since the Kansas version of strict liability is rooted in some notion of fault, it can be compared with other concepts of fault such as negligence, however imprecise the theoretical match of those concepts may be. Albertson v. Volkswagenwerk Aktiengesellschaft, 230 Kan. 368, 373, 634 P.2d 1127, 1131 (1981). As we understand Kansas law, all types of fault, regardless of degree, are to be compared in order to apportion the causal responsibility for the accident. See Kennedy v. City of Sawyer, 228 Kan. 439, 450, 618 P.2d 788, 796-97 (1980).[4] This is true whether the party at fault is the plaintiff, the defendant, or a nonparty. Id. at 460, 618 P.2d at 803; Forsythe v. Coats Co., Inc., 230 Kan. 553, 639 P.2d 43 (1982).[5]
 
 
 15
 As we interpret the collective thrust of the Kansas cases, it appears that Kansas in effect treats each kind of traditional tort liability as a departure from a defined duty whether that departure is in the nature of breach of warranty, routine neglect, failure to warn, or placing a defective and unreasonably dangerous product in the stream of commerce even though reasonable care was taken in its manufacture. The latter type of departure is the most difficult to conceptualize in relation to ordinary negligence. The only way to harmonize the Kansas cases is to assume that manufacturers (and others in the stream of commerce) have an absolute duty not to put defective products in the stream of commerce if they reasonably can foresee use which might result in injury. When they breach that duty, Kansas leaves to the good judgment of the jury the task of deciding the degree to which the breach of that duty contributed to the injury as compared, for instance, with the negligent inattention or misuse of a plaintiff. While this process of comparing theoretically unlike conduct may baffle scholars and become the source of endless critical commentary, we think Kansas has opted for broad jury latitude and good sense in the interest of what it considers the higher value of settling injury disputes in one action.
 
 
 16
 II. Procedural Propriety of Comparing Fault of Phantoms
 
 
 17
 The more difficult question in this case is whether the court's handling of the comparison of fault was procedurally proper. Plaintiff claims he had no idea who the phantom parties would be until the end of trial when the judge circulated proposed jury instructions naming Manitowoc Engineering and Lummus Company as phantom defendants. The trial court held that the issue of the phantoms' fault had been tried by consent within the meaning of Rule 15(b), thereby impliedly amending the pretrial order.
 
 Fed.R.Civ.P. 15(b) provides:
 
 18
 (b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
 
 
 19
 Rule 15 was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties. 6 C. Wright & A. Miller, Federal Practice & Procedure, § 1471, at 359 (1971). While variances between the pleadings and the proof were not tolerated before the federal rules were enacted, such variances are now freely allowed under Rule 15. Id. at 360. Thus, when evidence is presented on an issue beyond the scope of the pretrial order, Rule 15(b) may be invoked to effect an amendment of the pretrial order. Id. § 1491, at 455-56.[6]
 
 
 20
 This circuit permits a post-judgment amendment of a pretrial order to conform to the evidence if an issue has been tried with the express or implied consent of the parties and not over objection. Monod v. Futura, Inc., 415 F.2d 1170, 1173-74 (10th Cir. 1969). The test of consent is whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment. Id. at 1174; Ellis v. Arkansas Louisiana Gas Co., 609 F.2d 436 (10th Cir. 1979), cert. denied, 445 U.S. 964, 100 S.Ct. 1653, 64 L.Ed.2d 239 (1980); deHaas v. Empire Petroleum Co., 435 F.2d 1223 (10th Cir. 1970). Even where there is no consent, and objection is made at trial that evidence is outside the scope of the pretrial order, amendment may still be allowed unless the objecting party satisfies the court that he would be prejudiced by the amendment. Fed.R.Civ.P. 15(b); 6 Wright & Miller, § 1495, at 478. In the absence of a showing of prejudice, the objecting party's only remedy is a continuance to enable him to meet the new evidence. Fed.R.Civ.P. 15(b); 6 Wright & Miller, § 1495, at 480-81.
 
 
 21
 Plaintiff argues that the addition of Manitowoc Engineering and Lummus came so late in the trial as to deprive him of a fair opportunity to defend against the theory of their liability. He argues that the evidence pertaining to the phantoms was not sufficient to make an "issue" of their comparative fault within the meaning of Rule 15(b). In essence, he argues that there was no consent.
 
 
 22
 Implied consent is found where the parties recognized that the issue entered the case at trial and acquiesced in the introduction of evidence on that issue without objection. See, e.g., Ellis v. Arkansas Louisiana Gas Co., 609 F.2d 436, 439-40 (10th Cir. 1979), cert. denied, 445 U.S. 964, 100 S.Ct. 1653, 64 L.Ed.2d 239 (1980); Dell v. Heard, 532 F.2d 1330, 1332 (10th Cir. 1976); Hopkins v. Metcalf, 435 F.2d 123, 124-25 (10th Cir. 1970); Branding Iron Club v. Riggs, 207 F.2d 720, 724 (10th Cir. 1953). Under the terms of Rule 15(b), the objection must be on the ground that the evidence is not within the issues raised by the pleadings. Monod v. Futura, Inc., 415 F.2d 1170, 1174 (10th Cir. 1969). Since the purpose of Rule 15 is to bring the pleadings in line with the issues actually tried, it does not permit amendment to include collateral issues which may find incidental support in the record. Id.; Ellis v. Arkansas Louisiana Gas Co., 609 F.2d 436, 440 (10th Cir. 1979), cert. denied, 445 U.S. 964, 100 S.Ct. 1653, 64 L.Ed.2d 239 (1980); Simms v. Andrews, 118 F.2d 803, 807 (10th Cir. 1941). When the evidence claimed to show that an issue was tried by consent is relevant to an issue already in the case, and there is no indication that the party presenting the evidence intended thereby to raise a new issue, amendment may be denied in the discretion of the trial court. See, e.g., Ellis v. Arkansas Louisiana Gas Co., 609 F.2d 436, 440 (10th Cir. 1979), cert. denied, 445 U.S. 964, 100 S.Ct. 1653, 64 L.Ed.2d 239 (1980); Cook v. City of Price, 566 F.2d 699, 702 (10th Cir. 1977); deHaas v. Empire Petroleum Co., 435 F.2d 1223, 1229 (10th Cir. 1970); Cox v. Fremont County Public Building Authority, 415 F.2d 882, 887 (10th Cir. 1969); Simms v. Andrews, 118 F.2d 803, 807 (10th Cir. 1941); 6 Wright & Miller, Federal Practice and Procedure, § 1493, at 466 (1971). Consent will, however, be found when the party opposing the amendment himself produces evidence on the new issue. Hicks v. United States, 486 F.2d 325, 329 (10th Cir. 1973), cert. denied, 416 U.S. 938, 94 S.Ct. 1939, 40 L.Ed.2d 289 (1974); Knudson v. Boren, 261 F.2d 15, 19 (10th Cir. 1958). Whether the issue was tried by consent is a matter within the sound discretion of the trial court whose judgment will only be reversed for an abuse of discretion. Ellis v. Arkansas Louisiana Gas Co., 609 F.2d 436 (10th Cir. 1979), cert. denied, 445 U.S. 964, 100 S.Ct. 1653, 64 L.Ed.2d 239 (1980); deHaas v. Empire Petroleum Co., 435 F.2d 1223 (10th Cir. 1970).
 
 A. Manitowoc Engineering
 
 23
 With respect to Manitowoc Engineering, we hold that there was no abuse of discretion in the trial court's finding that the issue of its fault was tried by consent. Plaintiff was put on notice that defendants intended to have the fault of nonparties compared, both from the pretrial order, see note 1 supra, and from the order granting defendant's motion to compare fault of nonparties. Record, vol. 1, at 48-49. Our review of the record convinces us that plaintiff received information well in advance of trial which should have made him aware that the fault of Manitowoc Engineering was in issue. Plaintiff took the deposition of Malcolm Fell on April 25, 1978, more than a year before trial. Record, vol. 2. The deposition revealed that Fell worked for Manitowoc Engineering, which ordered the jack. Id. at 5, 21. Manitowoc Engineering supplied Columbus-McKinnon with a few general specifications for the jack, but Columbus-McKinnon supplied most of the specifications and tested the jacks. Id. at 71-74. Plaintiff discovered that Manitowoc Engineering was aware that the jack might be used apart from the crane, and that it did not specify safety stops as a precaution or place a warning on the jack. Id. at 36-37, 51, 64-65. Thus plaintiff had discovered, more than a year before trial, all the elements of fault necessary for a products liability case against Manitowoc Engineering.
 
 
 24
 Even if Fell's deposition were not enough to put plaintiff on notice of the issue of Manitowoc Engineering's fault, the proceedings at trial suffice. Plaintiff himself called Mr. Fell to the stand and again pursued the issue of Manitowoc Engineering's fault under a products liability theory. Record, vol. 6, at 970-74, 981-82. Plaintiff also explored the issue on cross-examination. Id., vol. 6, at 1071, 1076, vol. 7, at 1077, 1281. Plaintiff's claim of surprise is unreasonable. He had ample opportunity to defend against the strict liability theory that Manitowoc Engineering was partly at fault. Plaintiff has not pointed to any additional evidence he might have introduced were it not for the claimed surprise. Finally, plaintiff failed to object to any evidence at trial as being beyond the scope of the pretrial order. We therefore hold that plaintiff did consent to the trial of the issue of Manitowoc Engineering's fault, thereby impliedly amending the pretrial order.
 
 
 25
 Our decision is not inconsistent with Rule 8(c) which requires a defendant to set forth in his answer specified affirmative defenses and "any other matter constituting an avoidance or affirmative defense." Fed.R.Civ.P. 8(c). The policy behind Rule 8(c) is to put plaintiff on notice well in advance of trial that defendant intends to present a defense in the nature of an avoidance. The defense that a phantom party contributed to the plaintiff's injuries is in the nature of an avoidance and normally would be required to be pleaded affirmatively in the answer. See Brown v. Keill, 224 Kan. 195, 207, 580 P.2d 867, 876 (1978) (defendant alleged in her answer that a nonparty was at fault). This of course requires only notice, not joinder. See 224 Kan. at 206-07, id. at 875-76.
 
 
 26
 Even though the fault of phantom parties is in the nature of an affirmative defense, the policy behind Rule 15(b) can override the failure to plead it. If the issue was tried by consent without objection, the answer must be treated as if the defense had been raised. Fed.R.Civ.P. 15(b); Gallegos v. Stokes, 593 F.2d 372, 374-75 (10th Cir. 1979); Dixson v. Newsweek, Inc., 562 F.2d 626, 633 (10th Cir. 1977); Radio Corp. of America v. Radio Station KYFM, Inc., 424 F.2d 14, 17 n. 3 (10th Cir. 1970); Knudson v. Boren, 261 F.2d 15, 19 (10th Cir. 1958); Kaye v. Smitherman, 225 F.2d 583, 594-95 (10th Cir.), cert. denied, 350 U.S. 913, 76 S.Ct. 197, 100 L.Ed. 800 (1955); 5 Wright & Miller, Federal Practice and Procedure, § 1278, at 346-49 (1969), and vol. 6, § 1492, at 456-57 (1971). But because the major purpose of Rule 8(c) is to provide particularized notice of certain matters, courts must be particularly careful to scrutinize the record to ensure that plaintiff had adequate notice and opportunity to rebut the tardily-raised Rule 8(c) defense before finding that it was tried by consent. See Chesapeake & Ohio Railway v. Newman, 243 F.2d 804, 812-13 (6th Cir. 1957); Kaye v. Smitherman, 225 F.2d 583, 594-95 (10th Cir.), cert. denied, 350 U.S. 913, 76 S.Ct. 197, 100 L.Ed. 800 (1955); Simms v. Andrews, 118 F.2d 803, 807 (10th Cir. 1941). After careful scrutiny of the record, we hold that plaintiff had sufficient notice and opportunity to rebut the defense that Manitowoc Engineering was at fault, and that the court did not abuse its discretion in finding that the issue of Manitowoc Engineering's fault was tried by consent under Rule 15(b).
 
 
 27
 We note that plaintiff also argues that Manitowoc Engineering should not have been made a phantom party because Kansas has not adopted the "stream of commerce" theory. We disagree. The Kansas courts have said that manufacturers and "those in the chain of distribution" can be strictly liable in tort to those to whom injury may reasonably be foreseen when the product is used for a reasonably foreseeable purpose. Kennedy v. City of Sawyer, 228 Kan. 439, 446, 618 P.2d 788, 794 (1980). Plaintiff argues that the stream of commerce test will open the floodgates to undue litigation in Kansas strict liability cases and will unjustifiably complicate such cases. The answer to this contention is that the Kansas courts have declared the policy behind § 258a to be to fully litigate the fault of all possible responsible parties in one action. Eurich v. Alkire, 224 Kan. 236, 238, 579 P.2d 1207, 1208 (1978); Albertson v. Volkswagenwerk Aktiengesellschaft, 230 Kan. 368, 374, 634 P.2d 1127, 1132 (1981). In the absence of contrary Kansas authority, we hold that the district court did not abuse its discretion in adhering to the stream of commerce theory.
 
 B. Lummus Company
 
 28
 With respect to Lummus, we know only that it is a wholly-owned subsidiary of Combustion Engineering, to which it rents tools and machinery. There is no evidence on the issue of the fault of Lummus. At most, the evidence shows that Lummus was a mere conduit in the chain of distribution. This was enough to satisfy the trial judge, Record, vol. 1, at 113,[7] but it does not satisfy this court. The evidence regarding Lummus was relevant to the issue of how the jack arrived at the worksite, and defendants gave no indication that they intended to make an issue of Lummus' fault. See Ellis v. Arkansas Louisiana Gas Co., 609 F.2d 436, 440 (10th Cir. 1979), cert. denied, 445 U.S. 964, 100 S.Ct. 1653, 64 L.Ed.2d 239 (1980); Cook v. City of Price, 566 F.2d 699, 702 (10th Cir. 1977); Cox v. Fremont County Public Building Authority, 415 F.2d 882, 887 (10th Cir. 1969). Plaintiff was denied a fair opportunity to defend against the theory that Lummus was at fault, and might have presented additional evidence had he known the theory earlier. In fact, the absence of evidence before or even during trial on at least one element of a possible case against Lummus (even standing by itself) leads us to the conclusion that plaintiff had inadequate notice that the fault of Lummus was at issue.[8] The trial court abused its discretion in ruling that plaintiff consented to the trial of the issue of the fault of Lummus.
 
 III. Cross-Appeal
 
 29
 Manitowoc-Forsythe cross-appeals the denial of two of its motions by the trial court. First, Manitowoc-Forsythe assigns error to the denial of its pretrial motion for summary judgment on the ground that, as a matter of law, it could not reasonably foresee plaintiff's abnormal use of the jack apart from the crane. In denying the motion, the court reasoned that reasonable minds might differ in their assessment of the foreseeability of plaintiff's use, and therefore the question was for the jury. Record, Supp. vol. 4, at 41. We find no error in that ruling.
 
 
 30
 Second, Manitowoc-Forsythe argues the court erred in denying its motions for directed verdict, at the close of plaintiff's case-in-chief and at the end of trial, on the ground that there was no evidence that it sold the crane and jack in question. In its opening statement to the jury, Manitowoc-Forsythe admitted the sale. Record, vol. 5, at 109. Although it now argues that the reference in its opening statement was not to the crane involved in the instant case, in context it could not have meant anything else. That judicial admission provided the missing link necessary to permit submission of Manitowoc-Forsythe's liability to the jury. The trial court did not err in denying these motions for directed verdict.
 
 Conclusion
 
 31
 Since our judgment is that Lummus was improperly included as a phantom party, it is not necessary to reach the numerous other issues raised on appeal. Those issues will not necessarily arise in the retrial of this matter. While under some circumstances it might be possible to correct the erroneous inclusion of a phantom party by the retrial of the issue of apportionment only, after full consideration of the record we believe that all the issues are so intertwined that a retrial of the entire matter is the only proper way to correct the error. In apportioning causation and liability on retrial, the trial court should adhere to the interpretation of Kan.Stat.Ann. § 60-258a set forth in Greenwood v. McDonough Power Equipment, Inc., 437 F.Supp. 707 (D.Kan.1977), aff'd, 687 F.2d 338 (10th Cir. 1982).
 
 
 32
 As regrettable as it is to order a retrial of a matter of this magnitude, it illustrates the danger of leaving to the implications of the trial the formal introduction of phantom parties. Defendants intending to avoid liability by asserting phantom party fault delay raising the identity of those parties at their peril.
 
 
 33
 REVERSED with directions to grant a new trial.
 
 
 
 *
 Clarence A. Brimmer, Jr., Chief Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 [1]
 The pretrial order recites that the "(f)ollowing issues of law were submitted to plaintiff and no objections have been made (:)
 
 
 [7]
 Whether the defendants should be allowed to assess the comparative fault of any persons other than the plaintiff, the defendants, or others specifically named in the pretrial order." Record, vol. 1, at 35-36
 
 
 [2]
 The court stated: "We would agree in principle that the matter should have been raised prior to trial. However, under Rule 16 the pre-trial order governs unless amended, and under Rule 15(b) an issue tried by consent, in other words without objection, amounts to implied amendment (of the pretrial order)." Record, vol. 7, at 1376
 
 
 [3]
 The Act provides:
 (a) The contributory negligence of any party in a civil action shall not bar such party or said party's legal representative from recovering damages for negligence resulting in death, personal injury or property damage, if such party's negligence was less than the causal negligence of the party or parties against whom claim for recovery is made, but the award of damages to any party in such action shall be diminished in proportion to the amount of negligence attributed to such party. If any such party is claiming damages for a decedent's wrongful death, the negligence of the decedent, if any, shall be imputed to such party.
 (b) Where the comparative negligence of the parties in any such action is an issue, the jury shall return special verdicts, or in the absence of a jury, the court shall make special findings, determining the percentage of negligence attributable to each of the parties, and determining the total amount of damages sustained by each of the claimants, and the entry of judgment shall be made by the court. No general verdict shall be returned by the jury.
 (c) On motion of any party against whom a claim is asserted for negligence resulting in death, personal injury or property damage, any other person whose causal negligence is claimed to have contributed to such death, personal injury or property damage shall be joined as an additional party to the action.
 (d) Where the comparative negligence of the parties in any action is an issue and recovery is allowed against more than one party, each such party shall be liable for that portion of the total dollar amount awarded as damages to any claimant in the proportion that the amount of his or her causal negligence bears to the amount of the causal negligence attributed to all parties against whom such recovery is allowed.
 (e) The provisions of this section shall be applicable to actions pursuant to this chapter and to actions commenced pursuant to the code of civil procedure for limited actions.
 Kan.Stat.Ann. § 60-258a (1976).
 
 
 [4]
 In Kennedy, the court explained that the Kansas Comparative Negligence Act applies wherever a defendant could set up a defense of contributory negligence or an analogous defense. Thus, plaintiff's fault must be compared with that of defendant whether it be characterized as contributory negligence, assumption of risk, product misuse, or unreasonable use. These defenses all depend on the reasonableness of plaintiff's conduct, a negligence concept. 228 Kan. at 461, 618 P.2d at 796
 
 
 [5]
 The perplexing problem of this case is Kansas' sudden introduction of comparative negligence into the area of manufacturer and distributor liability without a comprehensive consideration of the impact of mandating judgment based entirely on notions of fault on a field of liability which has significantly departed from the traditional notions of fault antedating the whole field of products liability. Thus, the fault of an injured plaintiff (formerly contributory negligence) simply is not a comparable concept to strict liability imposed on a non-manufacturer who merely serves as a conduit for a product whose manufacturer may also be held strictly liable on one of at least three theories not necessarily based on the same notions of deficient conduct which apply to contributorily negligent consumers or negligent non-producing tortfeasors. The stream of commerce liability of a distributor seems to have been based more on a guarantor theory or even an insurance theory than on notions of faulty conduct. Equally, the unreasonably dangerous product doctrine has elements of insurance underpinning its development. The theory suggests that distributors must build into their products the cost of injuries flowing from their use even if no defective workmanship or other negligent behavior is involved
 We are persuaded that what Kansas intends by the overarching application of comparative negligence to all forms of death, personal injury or property damage cases is to override prior notions of liability to the extent that they are based on notions of spreading the risk or notions of insurance, and to now examine such cases in light of the sundry duties which the cases have heretofore imposed on various parties related in some form or other to the claimed injury. Thus injured consumers will be examined by contributory negligence standards to determine the degree to which they have departed from their duty of ordinary care. Manufacturers will be examined to ascertain the degree to which they have departed from their significantly higher (strict) duty of care in production and design, including their duty to anticipate misuse and to guard against injury to ordinary and even negligent consumers. Distributors will also be examined to determine the degree to which they have departed from their higher (strict) duty to understand the product's nature and uses and to guard against injury by available methods including appropriate warnings. Comparative negligence cannot intelligently be applied to products liability cases without in effect changing the word "negligence" to "fault" as the Kansas Supreme Court seems to have done. This then places the primary focus on the duties which each related party bears to the other. On a case-by-case basis, some adjustment undoubtedly will be required, but in general the duties may be derived from the discussions of the underlying responsibilities of the industrial defendants in strict liability cases.
 We think that until refined in future Kansas cases, a jury instruction based on the concepts embodied in Restatement (Second) of Torts § 402A (1965) will not constitute reversible error, even though such an instruction is analytically difficult to harmonize with notions of comparative fault and even though another instruction might be preferable.
 
 
 [6]
 Several courts have permitted de facto amendment of the pretrial order where the policy behind Rule 15(b) in favor of having every claim decided on its merits outweighs the policy behind Rule 16 of preventing unfair surprise at trial. See, e.g., Perfection-Cobey Co. v. City Tank Corp., 597 F.2d 419, 420-21 (4th Cir. 1979); Investment Service Co. v. Allied Equities Corp., 519 F.2d 508, 511 (9th Cir. 1975); Mains v. United States, 508 F.2d 1251, 1258-60 (6th Cir. 1975), cert. denied, 439 U.S. 981, 99 S.Ct. 569, 58 L.Ed.2d 652 (1978); Wallin v. Fuller, 476 F.2d 1204, 1208-11 (5th Cir. 1973); Deakyne v. Commissioners of Lewes, 416 F.2d 290, 297 n. 12 (3d Cir. 1969); Monod v. Futura, Inc., 415 F.2d 1170, 1173-74 (10th Cir. 1969); Brooks v. Wootton, 355 F.2d 177, 178 (2d Cir. 1966); Blackwell v. Regal Cab Co., 316 F.2d 398, 399-400 (D.C.Cir.1963); Pepper v. Truitt, 158 F.2d 246, 251 (10th Cir. 1946); 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1527, at 612-13 (1971)
 It is a matter within the trial court's discretion whether to permit the introduction of evidence, or give instructions on issues beyond the scope of the pretrial order. See, e.g., Seneca Nursing Home v. Secretary of Social and Rehabilitation Services of Kansas, 604 F.2d 1309, 1314 (10th Cir. 1979); Monod v. Futura, Inc., 415 F.2d 1170, 1173 (10th Cir. 1969); Lumbermens Mutual Casualty Co. v. Rhodes, 403 F.2d 2, 7-8 (10th Cir. 1968), cert. denied, 394 U.S. 965, 89 S.Ct. 1319, 22 L.Ed.2d 567 (1969); Case v. Abrams, 352 F.2d 193, 195-96 (10th Cir. 1965); Coffey v. United States, 333 F.2d 945, 949 (10th Cir. 1964); 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1527, at 608-09 (1971). Thus, even though Rule 16 itself refers only to amendment of the pretrial order at trial to prevent manifest injustice, this Circuit has made clear that the order may be amended after trial under Rule 15(b) if an issue beyond its scope was tried by consent. Monod v. Futura, Inc., 415 F.2d 1170, 1173-74 (10th Cir. 1969).
 
 
 [7]
 The trial judge, after hearing plaintiff's objection to the proposed jury instruction naming Lummus as a phantom, stated that "it just takes a scintilla of evidence to show (Lummus) as a phantom party." Record, vol. 7, at 1434. The judge thus applied a standard which is the sine qua non of insufficient evidence. The court's scintilla standard, announced at the end of trial, is in sharp contrast to the directed verdict standard which the court enunciated prior to trial. Although a scintilla of evidence might be enough to justify serious consideration of a nonparty's role in an injury, it is not sufficient to justify submission of a nonparty to the jury as a phantom defendant. When at the end of trial the judge decides which nonparties to submit as phantoms on the verdict form, the directed verdict standard must be applied. The court's apparent confusion about the standards governing consideration, as opposed to actual submission, of phantom party fault, together with the lack of pleading notice before trial, enhanced the possibility of a slippery, undisciplined trial in which the parties had no notice of the governing standards and were likely to be prejudiced in the presentation of their cases
 
 
 [8]
 We reach the same result on the ground that the trial court incorrectly applied its directed verdict standard to Lummus. Record, vol. 1, at 60. The court announced that "(i)f the evidence would be insufficient to hold (a phantom) in the case if they were actually sued, then the jury will not be allowed to consider their contribution to the injuries." Id. While we agree that there was enough evidence of the products liability form of fault on the part of Manitowoc Engineering to warrant its submission to the jury as a phantom, we find the record devoid of any evidence on a necessary element of the products liability form of fault on the part of Lummus. Unlike the case of Manitowoc Engineering, there was no evidence that Lummus could have foreseen the possible use of the jack apart from the crane. On this record, had Lummus been sued, the trial court would have been required to direct a verdict in its favor. In addition, there was no evidence of duty, breach of duty or causation which would support a negligence theory, and no evidence on a warranty theory. We therefore think that in the case of Lummus the trial court misapplied its two-part test of whether a phantom party's causal fault should be submitted to the jury. We realize this is a matter of substantive law, but we mention it here because it supports the same result we have reached under Rule 15(b)